UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

| | |
|---|---|
| NICHOLAS SANDMANN, by and through his parents and natural guardians, TED SANDMANN and JULIE SANDMANN,<br><br>        Plaintiffs,<br><br>v.<br><br>WP COMPANY LLC, d/b/a THE WASHINGTON POST,<br><br>        Defendant. | No. 2:19-cv-19-WOB-CJS |

## THE WASHINGTON POST'S REPLY BRIEF
## IN SUPPORT OF THE MOTION TO DISMISS

Philip W. Collier
Bethany A. Breetz
STITES & HARBISON, PLLC
400 West Market Street, Suite 1800
Louisville, KY 40202
Telephone:  (502) 587-3400

William G. Geisen
STITES & HARBISON, PLLC
100 East RiverCenter Boulevard
Suite 450
Covington, KY 41011
Telephone:  (859) 652-7601

*Counsel for The Washington Post*

Kevin T. Baine (*pro hac vice*)
Thomas G. Hentoff (*pro hac vice*)
Nicholas G. Gamse (*pro hac vice*)
Katherine Moran Meeks (*pro hac vice*)
Whitney G. Woodward (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone:  (202) 434-5000

*Counsel for The Washington Post*

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................1

ARGUMENT ..................................................................................................................2

I.      Most of the Challenged Statements Are Not Actually About Plaintiff ...............................2

II.     The Post's Accounts of Plaintiff's Impasse with Phillips Are Substantially True .............7

III.    Plaintiff Has Not Stated a Claim Based on Allegedly Defamatory Gists..........................12

       A.      The Articles Are Not Defamatory Per Se, and Plaintiff Has Failed to Plead Special Damages ....................................................................................................12

       B.      The Articles Do Not Bear the Defamatory Meanings Alleged............................14

       C.      The Post Articles Do Not Affirmatively Endorse the Implied Charges ...............17

       D.      Three of the Four Defamatory Gists Are Opinions Not Provably False...............18

CONCLUSION.................................................................................................................20

# TABLE OF AUTHORITIES

## CASES

*Algarin v. Town of Wallkill*, 421 F.3d 137 (2d Cir. 2005) .............................................................11

*Bell v. Courier-Journal & Louisville Times Co.*, 402 S.W.2d 84 (Ky. 1966) ...............................9

*Biro v. Conde Nast*, 883 F. Supp. 2d 441 (S.D.N.Y. 2012) ..........................................................18

*Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125
    (10th Cir. 2014).........................................................................................................................7

*Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081
    (10th Cir. 2017).................................................................................................................7, 8, 9

*Chau v. Lewis*, 771 F.3d 118 (2d Cir. 2014) ..................................................................................6

*Cheney v. Daily News L.P.*, 654 F. App'x 578 (3d Cir. 2016) ......................................................5

*Church of Scientology Int'l v. Time Warner, Inc.*, 806 F. Supp. 1157
    (S.D.N.Y. 1992)..........................................................................................................................4

*Clark v. Viacom*, 617 F. App'x 495 (6th Cir. 2015). ....................................................................7

*Compuware Corp. v. Moody's Invs. Servs.*, 499 F.3d 520 (6th Cir. 2007)...................................17

*Croce v. N.Y. Times Co.*, 345 F. Supp. 3d 961 (S.D. Ohio 2018)..................................................7

*Cullen v. S. E. Coal Co.*, 685 S.W.2d 187 (Ky. Ct. App. 1983) .............................................13, 14

*Dennison v. Murray State Univ.*, 465 F. Supp. 2d 733 (W.D. Ky. 2006).......................................3

*Dermody v. Presbyterian Church (U.S.A.)*, 530 S.W.3d 467 (Ky. Ct. App. 2017) ................13, 20

*Desai v. Charter Commc'ns, LLC*, 2019 WL 1421756
    (W.D. Ky. Mar. 29, 2019)...................................................................................................13, 14

*Farrell v. Triangle Publications, Inc.*, 159 A.2d 734 (Pa. 1960)...................................................6

*Frascatore v. Blake*, 344 F. Supp. 3d 481 (S.D.N.Y. 2018)....................................................7, 20

*Gearhart v. WSAZ, Inc.*, 150 F. Supp. 98 (E.D. Ky. 1957) .........................................................14

*Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222 (7th Cir. 1993) ......................................................9

*Heller v. NBCUniversal, Inc.*, 2016 WL 6583048 (C.D. Cal. June 29, 2016)..............................14

*Hill v. Evans*, 258 S.W.2d 917 (Ky. 1953) ..............................................................................6, 12

*Hodge v. WCPO Television News*, 2001 WL 1811681 (Ky. Cir. Ct. Oct. 1, 2001) ......................1

*Holt v. Cox Enterprises*, 590 F. Supp. 408 (N.D. Ga. 1984) ............................................................4

*Hosanna-Tabor Evangelical Lutheran Church and Sch. v. EEOC*,
   565 U.S. 171 (2012)..................................................................................................................20

*Jackson v. Consumer Pubs.*, 11 N.Y.S.2d 462 (App. Div. 1939)....................................................5

*Jankovic v. Int'l Crisis Grp.*, 494 F.3d 1080 (D.C. Cir. 2007) ....................................................3

*Ky. Kingdom Amusement Co. v. Belo Ky., Inc.*, 179 S.W.3d 785 (Ky. 2005) ..............................10

*Loftus v. Nazari*, 21 F. Supp. 3d 849 (E.D. Ky. 2014) ..........................................................2, 3, 4

*Ludlow v. Northwestern Univ.*, 79 F. Supp. 3d 824 (N.D. Ill. 2015)..............................................7

*Masson v. New Yorker Mag., Inc.*, 501 U.S. 496 (1991) ................................................7, 9, 10

*Moldea v. N.Y. Times Co.*, 15 F.3d 1137 (D.C. Cir. 1994)...........................................................19

*N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964)........................................................................10

*Nichols v. Moore*, 477 F.3d 396 (6th Cir. 2007)....................................................................17, 18

*Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299 (6th Cir. 2000)..........................................7

*Partington v. Bugliosi*, 56 F.3d 1147 (9th Cir. 1995) ....................................................................1

*Ratajack v. Brewster Fire Dep't*, 178 F. Supp. 3d 118 (S.D.N.Y. 2016) ....................................20

*Roche v. Home Depot U.S.A.*, 197 F. App'x 395 (6th Cir. 2006)..................................................13

*Stanton v. Metro Corp.*, 438 F.3d 119 (1st Cir. 2006)....................................................................5

*Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.2d 781 (Ky. 2004) ............................................13, 14

*Stroman v. United States*, 878 A.2d 1241 (D.C. 2005)................................................................15

*Sweeney & Co. v. Brown*, 60 S.W.2d 381 (Ky. 1933) ......................................................12, 13, 14

*Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236 (2d Cir. 2017) ......................7

*Va. Citizens Def. League v. Couric*, 910 F.3d 780 (4th Cir. 2018)..............................................11

*Ward v. Zelikovsky*, 643 A.2d 972 (N.J. 1994) ............................................................................19

*West v. Media Gen. Operations, Inc.*, 120 F. App'x 601 (6th Cir. 2005)......................................1

*Weyrich v. New Republic, Inc.*, 235 F.3d 617 (D.C. Cir. 2001) ....................................................6

*Wheeler v. Twenty-First Century Fox*, 322 F. Supp. 3d 445 (S.D.N.Y. 2018)...............................11

*White v. Fraternal Order of Police*, 909 F.2d 512 (D.C. Cir. 1990) ......................................17, 18

*Yancey v. Hamilton*, 786 S.W.2d 854 (Ky. 1989)..........................................................................19

## CONSTITUTION, STATUTES, AND RULES

U.S. Const. amend. I ...................................................................................................... *passim*

## OTHER AUTHORITIES

Restatement (Second) of Torts § 564A..........................................................................................4

Restatement (Second) of Torts § 566..........................................................................................19

Robert D. Sack, *Sack on Defamation* (5th ed. 2019) ..........................................................7, 11, 14

# INTRODUCTION

The pleadings in this case describe a volatile encounter between a group of teenage boys, many of them wearing "Make America Great Again" caps, and two groups of protestors they met at the foot of the Lincoln Memorial.  Mere feet from Native American protestors, the boys engaged in chants and tomahawk chop arm movements that Plaintiff Nicholas Sandmann admits were perceived by "many" as "mocking" the Native American protestors.  Post Br. 26.  As he further acknowledges, the incident captured the public's attention because it was shot through with "express themes of race, politics, and abortion."  Opp. 33.  But that observation merely highlights one of the reasons why coverage of the incident warrants First Amendment protection.  The Washington Post reported the subjective thoughts and impressions of multiple witnesses to an event that was rich with symbolism and ripe for competing interpretations.  Although Plaintiff now dismisses the Post's sources, including his own church and school, as "tale makers" who spread a false narrative about him, Opp. 10, many of the sources' statements and quotes he challenges did not convey any facts at all, much less facts about him in particular.  The mere fact that the Post reported opinions and perceptions about a controversial event in the public square does not give rise to a defamation claim.  *See Partington v. Bugliosi*, 56 F.3d 1147, 1154 (9th Cir. 1995) (the First Amendment protects communication of a "personal perspective about . . . ambiguities and disputed facts" related to "a controversial occurrence"); *Hodge v. WCPO TV News*, 2001 WL 1811681, at *2 (Ky. Cir. Ct. Oct. 1, 2001).

Plaintiff complains of some five dozen statements spread over seven articles—really four articles, including updated online and print versions of the first and last articles.  To sustain such a shotgun approach, Plaintiff must plead facts sufficient to support "*each element* of defamation on *each statement*" he has placed at issue.  *West v. Media Gen. Operations, Inc.*, 120 F. App'x 601, 625 (6th Cir. 2005) (emphasis added).  And each statement must be taken in the context of

1

the specific article in which it appears.  So viewed, each statement fails to support a claim for defamation for one or more reasons—it is not about Plaintiff, it is not defamatory, it is a statement of opinion, or it is substantially true.  For ease of reference, the Post has attached as Exhibit 6 a chart showing the bases for dismissal for every statement Plaintiff has challenged.

Taking a step back, Plaintiff's Complaint boils down to the claim that the Post defamed him by implying (1) that he assaulted and/or physically intimidated Nathan Phillips, a Native American man and source for the Post, (2) that he instigated a confrontation with Phillips, (3) that he "engaged in racist taunts," and (4) that he violated the standards of his religious community and school, such that he should be expelled.  *See, e.g.*, Compl. ¶¶ 115–117, 120, 125–128.  All of the challenged statements, taken in context, are alleged to imply one of those four meanings, and none is alleged to be defamatory for any other reason.  But each of these claims of libel by implication fails for one or more of the following reasons:  (1) claims of defamation by implication in Kentucky require an allegation of special damages, which is absent here, (2) the articles do not imply the charge alleged, (3) nothing on the face of these articles indicates that the Post *intended* to make such a charge, and (4) the charge itself is a matter of subjective opinion.

For these reasons, the Complaint should be dismissed.

### ARGUMENT

## I.   Most of the Challenged Statements Are Not Actually About Plaintiff.

The "group libel" doctrine holds that a plaintiff cannot satisfy the "of and concerning" element of his claim, as a matter of law, where the alleged libel is merely directed at a group or class to which he belongs.  *Loftus v. Nazari*, 21 F. Supp. 3d 849, 854 (E.D. Ky. 2014).  As the Post argued in its opening brief, that doctrine requires dismissal of claims that are based on statements about the large group of teenage boys gathered at the Lincoln Memorial—statements such as "*the teens and other apparent participants from the nearby March for Life rally* began taunting the

indigenous crowd," Exs. D, E, F (emphasis added), or "*scores of students* around [Phillips] seem to mimic and mock him," Ex. J (emphasis added). Plaintiff attempts to preserve his attack on these statements and others by arguing that the group libel doctrine is altogether "inapplicable," Opp. 20, if the publication contains any reference to the plaintiff. In his view, if an article contains any reference to him, then a reader could understand *every challenged statement in that article* to be about him—even statements that refer only to the very large group of students of which he was a part. That argument mischaracterizes the law.

This motion requires consideration of whether a reasonable reader would understand *each statement* challenged in the Complaint as "of and concerning" Plaintiff. *See, e.g.*, *Jankovic v. Int'l Crisis Grp.*, 494 F.3d 1080, 1089 (D.C. Cir. 2007) (statement by statement approach); *Loftus*, 21 F. Supp. 3d at 854 (same); *Dennison v. Murray State Univ.*, 465 F. Supp. 2d 733, 750–53 (W.D. Ky. 2006) (same). This Court has already rejected the view that the group libel doctrine is categorically "inapplicable," Opp. 20, whenever the publication contains some specific reference to the plaintiff. It held in *Loftus* that derogatory remarks about the medical profession in an online review could not reasonably be understood to concern the plaintiff simply because the review *also* identified the plaintiff by name and specifically criticized her skills as a physician. 21 F. Supp. 3d at 854. The Court recognized that *each statement needed to be evaluated separately* for whether it satisfied the "of and concerning" element—and it invoked the group libel doctrine to bar plaintiff from recovering for criticisms targeted only at "doctors" generally. Plaintiff argues that *Loftus* does "not control" because in that case the statements concerning the medical profession involved "separate occurrences" from those concerning the plaintiff. Opp. 24. That is not true: in the same review in which the defendant lambasted the plaintiff for botching her surgery, she expressed doubt

3

that plaintiff would be held "accountable" because "Doctors cover up for Doctors knowing that horrible mistakes were made." *Loftus*, 21 F. Supp. 3d at 852.

Other federal courts also recognize that the "of and concerning" inquiry must proceed statement by statement, even where the plaintiff has been "singled out," Opp. 18, elsewhere in an article. In *Church of Scientology International v. Time Warner, Inc.*, 806 F. Supp. 1157 (S.D.N.Y. 1992), plaintiff, one of several hundred corporate entities within the Scientology religion, brought a defamation claim based on six statements in a magazine article referring variously to "Scientology," the "Church of Scientology," and the "church," *id.* at 1161. As in this case, the article included a photograph of the specific plaintiff, and the plaintiff argued that the photograph alone was sufficient to create an issue of fact whether *all* of the contested statements were "of and concerning" it in particular. *Id.* The court rejected that position and, on a motion to dismiss, proceeded to evaluate whether *each challenged statement* could reasonably be understood to refer to the plaintiff—or only to Scientology and its adherents generally. *Id.* at 1162–64.

The court in *Holt v. Cox Enterprises*, 590 F. Supp. 408 (N.D. Ga. 1984), likewise carefully separated the libelous statements that were "of and concerning" plaintiff Darwin Holt, a former standout college football player, from those "of and concerning" only his team. The articles explicitly "contain[ed] reference to Holt's role in a controversy surrounding a sporting event" and "suggest[ed] that Holt admitted to violating the rules intentionally." *Id.* at 409, 411. Yet the court refused to allow plaintiff to recover for additional accusations about *the team*'s reputation for violence, specifically citing to the Restatement (Second) of Torts's group libel provision, section 564A: Defamation of a Group or Class. *Id.* at 411. Like *Loftus* and *Church of Scientology*, *Holt* gives the lie to Plaintiff's assertion that the group libel doctrine is categorically "inapplicable," Opp. 20, when a plaintiff can establish that at least some of the contested statements are about him.

4

The cases that Plaintiff relies upon are not group libel cases at all, but merely cases in which a plaintiff's photo accompanied an article with which the plaintiff had no connection. In one, a firefighter's photo illustrated a news report about a scandal involving city employees in which he was not implicated, *Cheney v. Daily News L.P.*, 654 F. App'x 578, 580 (3d Cir. 2016); in another, a publicist's photo was included in a report about unethical practices in an unrelated profession, *Jackson v. Consumer Publ'ns*, 11 N.Y.S.2d 462, 464 (App. Div. 1939). The essence of plaintiff's claim in these cases was that he had nothing to do with the reported conduct, and that the publication defamed him by falsely implying that he did.

*Stanton v. Metro Corp.*, 438 F.3d 119 (1st Cir. 2006), illustrates the point. That case recognized that "whether a communication can reasonably be understood to be of and concerning the plaintiff *depends on the circumstances*." 438 F.3d at 128 (emphasis added). The plaintiff in *Stanton* claimed she was defamed when a magazine published her photo on the cover of an article about promiscuous teens. The appeals court refused to dismiss the claim on "of and concerning" grounds, even though the article included a disclaimer stating that the teens in the photo were not the same teens interviewed for the story. The court did not announce any generally applicable rule limiting the scope of the group libel doctrine—or even discuss that doctrine at all. Applying the now-defunct "no set of facts" pleading standard, it simply concluded, under the circumstances, that the disclaimer's small text, inconspicuous location, and ambiguous wording would not necessarily alert readers that plaintiff was not one of the teens featured in the report. *Id.* at 126.

Plaintiff argues that the Post articles are "of and concerning" him in their "entirety," Opp. 22, because they included or referenced the viral video in which he appeared. Opp. 18. But the Post's first print article (Ex. F) did not include Plaintiff's image at all, and the mere reference to a

video is hardly enough to identify him.[1]  In any event, Plaintiff has no basis to argue that the video tied him to the conduct described in the articles—such as the "Build the Wall" chant—when his own Complaint alleges that the video "did not show" him "making any gesture of any kind" or "uttering any words to Phillips or his companions."  Compl. ¶ 53.

Plaintiff's opposition brief makes only one attempt to connect the Post's statements about the group of teens to him in particular.  He argues that the initial report suggested that he was part of the group that "suddenly swarmed" Phillips because it "specifically accused him of blocking Phillips' retreat from the swarm of students."  Opp. 23.  But these are Plaintiff's counsel's words, not the Post's—the initial news report quoted Phillips saying only that Sandmann "blocked [his] way" toward "the Lincoln Memorial."  Exs. D, E, F.  But even assuming that the "swarming" statement is "of and concerning" Sandmann, it is not actionable for a separate reason:  it is not defamatory to report that he or any other student "swarmed" Phillips.  "Not all (or even most) maligning remarks can be considered defamatory."  *Chau v. Lewis*, 771 F.3d 118, 127 (2d Cir. 2014).  "An allegedly defamatory remark must be more than unpleasant or offensive; the language must make the plaintiff appear odious, infamous, or ridiculous."  *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 627 (D.C. Cir. 2001); *see also Hill v. Evans*, 258 S.W.2d 917, 918 (Ky. 1953).  To report that students "swarmed" Phillips during a fast-moving encounter between dispersing groups of protestors does not make them appear "odious" or "infamous."

In short, Plaintiff cannot state a claim of libel based on any of the statements in the Post articles that refer generally to the very large group of students at the Mall that day.

---

[1] Plaintiff argues that it is sufficient that the print article *referenced* the video—an entirely separate publication—because readers might be prompted to go "discover it."  Opp. 23.  No authority supports that position.  Plaintiff relies on *Farrell v. Triangle Publications, Inc.*, 159 A.2d 734, 736, 738–39 (Pa. 1960), but that case noted simply that readers might be prompted to seek out the names of county commissioners who were mentioned in a news article by their title.

## II.     The Post's Accounts of Plaintiff's Impasse with Phillips Are Substantially True.

Plaintiff argues that substantial truth is a question of fact that cannot be decided on a motion to dismiss.  He asserts that "no case" has permitted dismissal at the Rule 12(b)(6) stage "when substantial truth was contested."  Opp. 16 (quoting *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1137 n.8 (10th Cir. 2014)).  But the Court need look no further than the very case Plaintiff cites:  when *Brokers' Choice* returned to the Tenth Circuit in 2017 following a remand, the court of appeals *affirmed dismissal under Rule 12(b)(6) on substantial truth grounds*. *See* 861 F.3d 1081, 1111–39 (10th Cir. 2017).  Numerous other federal courts, including the Sixth Circuit, have also recognized that a defamation claim must be dismissed under Rule 12(b)(6) where it is clear from the face of the complaint that the statements at issue are substantially true.[2]

This result should not be surprising in light of the particular nature of defamation claims. Unlike in a typical civil action, "in a libel suit the central event—the communication about which suit has been brought—is ordinarily before the judge at the pleading stage."  2 *Sack on Defamation* § 16.2.1, at 16-3 to 16-4 (5th ed. 2019).  On the pleadings alone, the court must exercise a critical gatekeeping function, comparing the allegedly false statements in the news report against plaintiff's pleaded version of the truth.  If the "substance" of the statements is true, then dismissal is required, even if the plaintiff may quibble with the particulars.  *See Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 517 (1991).  This is precisely the approach followed by the Tenth Circuit in *Brokers' Choice*.  The court placed the defamatory news article side-by-side with a transcript

---

[2] *See, e.g.*, *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 242 (2d Cir. 2017); *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 313 (6th Cir. 2000); *Croce v. N.Y. Times Co.*, 345 F. Supp. 3d 961, 983 (S.D. Ohio 2018); *Frascatore v. Blake*, 344 F. Supp. 3d 481, 497 (S.D.N.Y. 2018); *Ludlow v. Northwestern Univ.*, 79 F. Supp. 3d 824, 837 (N.D. Ill. 2015).  Plaintiff cites only one case from the Sixth Circuit, *Clark v. Viacom*, which was unpublished and actually *affirmed* the dismissal on substantial truth grounds.  617 F. App'x 495, 510 (2015).

alleged to capture the "true" version of events.  Observing that "[s]ubstantial truth, not absolute or literal truth, is the standard," the court concluded that the article did not differ from the transcript the plaintiff embraced as the "true" version of events.  861 F.3d at 1109–10.

That is the case with the Post's statements reporting that Plaintiff had "blocked" Phillips or failed to "move[] out of his way":

- "I started going that way, and that guy in the hat stood in my way and we were at an impasse.  He just blocked my way and wouldn't allow me to retreat."  Exs. D, E, F; *see also* Ex. K (Third Tweet).
- Phillips said that "a teen, shown smirking at him in the video, was blocking him from moving."  Ex. G.
- "Most of the students moved out of his way, the video shows.  But Sandmann stayed still."  Exs. I, J.

These statements are all substantially true.  Indeed, Plaintiff's own allegations establish as much.

Like the plaintiff in *Brokers' Choice*, Sandmann has directed the Court to documentary evidence—a video compiled by his lawyer—that he says represents the "true" account of what transpired during his encounter with Nathan Phillips.  Compl. ¶¶ 65–66.  And that video discloses that Plaintiff stood firmly in place and refused to yield when Phillips walked up to him, even as his classmates backed away.  Far from denying this fact, Sandmann has repeatedly embraced it, alleging in his Complaint that he "*did not move from where he was standing when Phillips approached.*"  Compl. ¶ 50(d) (emphasis added).  His brief in opposition further underscores the point:  it acknowledges that "the group of children . . . *made way for*" Phillips until "Phillips decided to plant himself in front of Nicholas."  Opp. 38 (emphasis added).  At that point, Plaintiff "stood silently," Opp. 7, and refused to move.

In short, Plaintiff himself acknowledges that he "did not move" or "make way for" Phillips.  He argues simply that Phillips never attempted to move around him.  Opp. 26.  But even if Phillips could have walked around him, Plaintiff's steadfast refusal to budge can fairly be described as

"blocking."  *See* Random House College Dictionary 144 (1980) (to "block" is "to obstruct (someone or something) by placing obstacles in the way").

      As for Phillips' assertion that Plaintiff "wouldn't allow me to retreat," that statement appeared in only the initial report.  And it must be read in the context of that report, which made clear that Phillips was not disabled from retreating in any literal sense.  In the same breath that the Post quoted Phillips as saying that the "guy in the hat . . . wouldn't allow me to retreat," it also quoted him as saying they were at an "*impasse*," Exs. D, E, F (emphasis added), a word most naturally read to suggest that neither Phillips nor Sandmann would move out of the other's way. What is more, the initial report went on to make clear that the confrontation ended "when Phillips and other activists *walked away*," Exs. D, E, F (emphasis added), which Phillips could not have done if Plaintiff had literally prevented his retreat.  Taken as a whole, then, the initial report captures what actually happened:  Plaintiff "did not move from where he was standing," Compl. ¶ 50(d), and neither did Phillips.

      Whether *Phillips'* characterization that the "guy in the hat . . . wouldn't allow me to retreat" was *literally* true, *the Post's* overall account of the impasse was *substantially* true.  *See Brokers' Choice*, 861 F.3d at 1109–10 ("Substantial truth, not absolute or literal truth, is the standard"). "Where the defendant is a newspaper, the rule is that it is not to be held to the exact facts or to the most minute details of the transactions that it reports."  *Bell v. Courier-Journal & Louisville Times Co.*, 402 S.W.2d 84, 87 (Ky. 1966).  "Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified."  *Masson*, 501 U.S. at 517.  "Put another way, the statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced."  *Id.*; *see also Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1228 (7th Cir. 1993).

Plaintiff argues that the substantial truth doctrine "applies only 'in very narrow and limited circumstances.'"  Opp. 26 (quoting *Ky. Kingdom Amusement Co. v. Belo Ky., Inc.*, 179 S.W.3d 785, 791 (Ky. 2005)).  Just the opposite:  the substantial truth principle, like the actual malice rule, stands among the key First Amendment and common law doctrines that afford breathing space to speech on matters of public concern.  If publishers could be held liable for every minor inaccuracy, then speech essential to lively public debate would be chilled.  *See N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 271–72 (1964).  As support for his crabbed view of substantial truth, Sandmann cites *Kentucky Kingdom*, 179 S.W.3d 785, in which the court described "substantial truth" somewhat dismissively as "a convenient and necessary phrase invented by lawyers and judges" that "relates only to incidental information and not to essential content," *id.* at 791.  Although *Kentucky Kingdom* strikes a less generous tone than the Supreme Court has when describing the same principles, the case captures the essential point:  minor inaccuracies do not render a publication false so long as the overall thrust or gist is substantially true.  *See Masson*, 501 U.S. at 516.

Plaintiff argues that the Post effectively conceded that its reports were false when it published editor's notes based on subsequent reporting.  But contrary to Plaintiff's contention, editor's notes are not published solely to correct significant mistakes.  In this case, the editor's notes had several purposes—among them, calling readers' attention to statements that had been added or deleted from online versions, and providing links to subsequent developments.  The Post did not "admit" that its description of the impasse between Plaintiff and Phillips was false in any material respect.  Opp. 24.  The editor's note on the initial report, attached as Exhibit 3 to the Post's motion, noted that "[s]ubsequent reporting and video evidence contradicted or failed to corroborate" that Phillips was "prevented from moving."  As explained above, however, although Phillips was quoted as saying that he was prevented from retreating, the article as a whole made

clear that he was able to "walk[ ] away." It would discourage candid updates if editor's notes such as these were taken as admissions of error for purposes of defamation law. News organizations often update previous reporting for the benefit of their readers, and courts have not hesitated to dismiss complaints on the grounds asserted here even when outright corrections have been published. For example, in *Virginia Citizens Defense League v. Couric*, 910 F.3d 780, 783 (4th Cir. 2018), the Fourth Circuit affirmed the Rule 12(b)(6) dismissal of a defamation claim even though a journalist had issued a public statement acknowledging that a film contained a "misleading" segment that "did not accurately represent" the response of her interviewees. *See also Wheeler v. Twenty-First Century Fox*, 322 F. Supp. 3d 445, 454 (S.D.N.Y. 2018) (dismissing complaint on substantial truth grounds, even though news channel had retracted the report).[3]

In sum, the Post's published accounts of Plaintiff's faceoff with Phillips were substantially true. And that has particular significance with respect to the Fourth (Ex. G), Sixth (Ex. I) and Seventh (Ex. J) Articles, because the assertion in the Fourth Article that Plaintiff was "blocking" Phillips—and the assertion in the Sixth and Seventh that he "stayed still"—are the *only* contested statements in those articles that can reasonably be understood to be "of and concerning" him. Phillips' observation in the Fourth Article that "*[a] few of the young people* chanted 'Build that wall'" cannot reasonably be understood to describe Plaintiff's own conduct. To the contrary, numerous courts have recognized that statements referencing only *some* members of group cannot reasonably be understood as referring to *all* members a group. *See Algarin v. Town of Wallkill*, 421 F.3d 137, 140 (2d Cir. 2005); 1 *Sack on Defamation*, § 2:9.4[A], at 2-167 ("An attack on some

---

[3] Plaintiff also characterizes the views expressed by columnist Erik Wemple as an "admission" by the Post that its coverage gave readers "license[] to conclude" that Plaintiff targeted Phillips. Opp. 3. But Wemple was referring to the students, not to Plaintiff. More to the point, the views expressed by a columnist are not binding admissions on the Post. If anything, publication of the op-ed shows that the Post does not have the "biased agenda" Plaintiff claims. Compl. ¶¶ 8, 64.

is less likely to associate a particular member of the group with the allegations than an attack on all the members of the same group."). The Fourth Article makes plain that Phillips encountered "a throng," or large group, "of young, mostly white teenage boys," only "*[a] few*" of whom chanted the controversial political slogan. Ex. G. There is, therefore, nothing in the Fourth, Sixth and Seventh Articles that can give rise to a defamation claim by this Plaintiff.

## III.   Plaintiff Has Not Stated a Claim Based on Allegedly Defamatory Gists.

Plaintiff alleges that all of the contested statements are defamatory because they imply several meanings, or "gists," not stated on the face of the articles. These four implied meanings are that Plaintiff (1) assaulted and/or physically intimidated Nathan Phillips, (2) instigated a confrontation with Phillips, (3) engaged in "racist taunts," and (4) violated the standards of his religious community and school, such that he should be expelled. None of these implied meanings is actionable, for multiple reasons.

### A.    The Articles Are Not Defamatory *Per Se*, and Plaintiff Has Failed to Plead Special Damages.

Plaintiff cannot state a claim based on the allegedly defamatory implications, because those claims require allegations of special damages, which he has not even attempted to plead. Like many other states, Kentucky distinguishes between libel *per se* and libel *per quod*. Words are libelous *per se* if, on their face, they tend to expose the plaintiff "to public disgrace, ridicule, odium, or contempt." *Hill*, 258 S.W.2d at 918. If, on the other hand, they are libelous only by implication or reference to extrinsic fact, then they are actionable *per quod* and require pleading and proof of special damages—*i.e.*, pecuniary harm. *Sweeney & Co. v. Brown*, 60 S.W.2d 381, 384 (Ky. 1933).

Plaintiff argues that a libel is *per quod*—requiring pleading and proof of special damages—only if plaintiff relies on extrinsic facts to show defamatory meaning. Opp. 29–30. That is not the law. The law in Kentucky is that statements "reasonably susceptible of a defamatory meaning as

well as an innocent one, and [that] may be defamatory by reason of their imputation, **_or_** by reason of certain extrinsic facts . . . require evidence of pecuniary loss arising from the use thereof." *Sweeney*, 60 S.W.2d at 383 (emphasis added); *see also Dermody v. Presbyterian Church (U.S.A.)*, 530 S.W.3d 467, 475 (Ky. Ct. App. 2017) (dismissing libel by innuendo claim for failure to plead special damages); *Cullen v. S. E. Coal Co.*, 685 S.W.2d 187, 190 (Ky. Ct. App. 1983) (same). This is why the cases admonish that "[i]n determining whether a writing is libelous per se, courts must stay within the 'four corners' of the written communication . . . stripped of all innuendoes and explanations." *Roche v. Home Depot U.S.A.*, 197 F. App'x 395, 398 (6th Cir. 2006).

Plaintiff leans on a recent decision from the Western District of Kentucky that supposedly rejects the view that plaintiff must plead special damages if his libel claim is premised on an implied meaning. Opp. 28. But that case is currently on appeal, and its holding is in any event far more limited than Plaintiff suggests. In *Desai v. Charter Communications, LLC*, 2019 WL 1421756 (W.D. Ky. Mar. 29, 2019), the defendant argued that plaintiffs' libel claim was not actionable *per se* because it was premised on ambiguous statements suggesting that plaintiffs had stolen from their workplace. The court rejected that position, holding that "a statement falsely imputing crime—particularly theft—constitutes defamation per se." *Id.* at *4 (citing *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781 (Ky. 2004)). *Desai* and *Stringer* did no more than recognize that certain types of libelous statements—namely, statements imputing theft—are *always* actionable *per se*, even if based on implied meanings or extrinsic facts. These cases thus blur the old common law distinction between libel *per se* and slander *per se*. Historically, a slander, or spoken defamation, was actionable *per se* only if it fit within one of four narrow categories, including that it accused plaintiff in a crime. Courts in some jurisdictions have held that if a libel fits into one of four traditional slander *per se* categories, then it is actionable without

proof of special damages—even if it depends on imputations or extrinsic facts.  *See* 1 *Sack on Defamation* § 2:8.3[C], at 2-138.  *Desai* and *Stringer* do not go even that far.  They simply recognize that "a false accusation *of theft* is actionable per se—that is, libelous or slanderous per se."  *Desai*, 2019 WL 1421756, at \*5 (emphasis added) (quoting *Stringer*, 151 S.W.3d at 795).

*Desai* does not apply to this case because the Post articles do not imply that Plaintiff stole.  But even if *Desai* were applicable, it must be rejected because it misinterpreted the clear rule from the highest court of Kentucky.  The case that controls here is *Sweeney*, and it holds that claims of libel by implication or innuendo are actionable only upon pleading and proof of special damages.  There is no dispute that Plaintiff has failed to plead such damages.  Accordingly, his claims must be dismissed to the extent they are based on the articles' implied meanings or "gists."

## B.   The Articles Do Not Bear the Defamatory Meanings Alleged.

Plaintiff's claim of libel by implication fails for the additional reasons that the articles cannot reasonably be understood to convey the defamatory meanings alleged in the Complaint, nor do they contain anything on their face to indicate that the Post intended to convey those meanings.  "[W]ords must be measured by their natural effect upon the mind of the average lay person."  *Gearhart v. WSAZ, Inc.*, 150 F. Supp. 98, 110 (E.D. Ky. 1957).  "An innuendo . . . cannot enlarge or add to the sense or effect of the words charged to be libelous, or impute to them a meaning not warranted by the words themselves."  *Cullen*, 685 S.W.2d at 190; *see also Heller v. NBCUniversal, Inc.*, 2016 WL 6583048, at \*4 (C.D. Cal. June 29, 2016).  Yet that is precisely what Plaintiff attempts to do here.

1.   Plaintiff alleges that each of the Post reports conveyed the defamatory "gist" that he "assaulted and/or physically intimidated Phillips," Compl. ¶¶ 116, 120, 126, which he suggests is criminal and therefore defamatory per se, Opp. 34.  In the District of Columbia, where the altercation took place, assault is a crime requiring proof that the defendant made (1) an attempt,

14

with force or violence, to injure another, (2) with the apparent present ability to effect the injury, and (3) with the intent to do the act constituting the assault.  *Stroman v. United States*, 878 A.2d 1241, 1244–45 (D.C. 2005).  Nothing in the Post's coverage suggests that Plaintiff used force or violence in an effort to injure Phillips, much less that he acted with the required intent.  To the contrary, the initial reports stated that the student in the hat "blocked" Phillips and "st[ood] about a foot from the drummer's face wearing a relentless smirk."  Exs. D, E, F.[4]  Standing in another person's way while smiling insincerely—from a distance of a foot—may be rude, but such behavior is hardly criminal.  Indeed, Plaintiff told a national television audience:  "As far as standing there, I had every right to do so."  Ex. 4.

Plaintiff points to the statement that Phillips "said he felt threatened by the teens and that they suddenly swarmed around him as he and other activists were wrapping up the march."  Exs. D, F (cited at Opp. 37).  But this statement is not about Plaintiff in particular, only about the group; one person cannot "swarm."  And in any event, that Phillips "said he felt threatened as the students swarmed around him" does not suggest that the students (much less Plaintiff in particular) attempted to cause him physical injury.  Plaintiff also alleges that, in the Third Article (Ex. F) only, the Post used the following headline:  "Marcher's accost by boys in MAGA caps draws ire."  But "to accost" means "to confront boldly" and does not convey that Sandmann or any other student attempted to injure or threaten Phillips with physical violence.

The inference that Plaintiff committed an assault is even less tenable for the Fourth, Sixth and Seventh Articles.  The Fourth reported only that Sandmann "was blocking [Phillips] from moving," Ex. G, while the Sixth and Seventh Articles made clear that he simply "stayed still" as Phillips waded through the crowd, Exs. I, J.  None of these phrases implies that Plaintiff used force

---

[4] Sandmann does not allege that the "relentless smirk" remark is either false or defamatory.

15

or violence in an attempt to injure Phillips, or that he had a present ability to do so.  Although the Post's Fifth Article stated that Plaintiff "appeared," in an image, "to physically intimidate Nathan Phillips," Ex. H, that ambiguous phrasing falls short of suggesting that he committed an assault.  And since that was only a statement of what a photograph "appeared" to show, it is protected as a statement of opinion based on disclosed facts, which the viewer can assess for himself.

2.      The Post articles cannot reasonably be understood to imply that Plaintiff "instigated a confrontation" with Phillips.  To the contrary, they reported that Phillips approached the teens beating his drum.  The Sixth and Seventh Articles made clear that Phillips "walk[ed] into the group of students."  Exs. I, J.  But regardless of who "instigated the confrontation," there is nothing defamatory—odious, infamous or disgraceful—about being involved in the kind of stubborn impasse in which Plaintiff and Phillips found themselves.

3.      The articles cannot reasonably be understood to imply that Plaintiff engaged in racist conduct.  That implication supposedly arises from the statements that "*the teens and other apparent participants from the nearby March for Life* began taunting the dispersing indigenous crowd" and "*a few people* in the March for Life crowd began to chant, 'Build that wall.'"  Exs. D, E, F (emphasis added).  Once again, those statements do not refer to Plaintiff in particular, nor do the articles provide any basis to infer that he personally participated in these activities.  And even if the articles did imply these meanings, it is undisputed that Plaintiff *in fact performed a tomahawk chop* along with his classmates as Phillips approached—a gesture his own video acknowledges was perceived by "many" as "mocking" the Native American protestors.  Compl. ¶ 65; Ex. 5.[5]

4.      Nor can the Post's articles reasonably be understood to imply that Plaintiff violated

---

[5] Unable to dispute that Plaintiff's own video shows him doing the tomahawk chop, the opposition brief halfheartedly suggests that the images are not "conclusive[]," Opp. 27, but the Court can see Plaintiff's actions for itself when reviewing the video.

the standards of his faith community and school, such that he should be expelled.  Plaintiff bases

this implication on the Post's republication of the statement issued by the Diocese of Covington

and Covington Catholic High School.  As an initial matter, the statement referred only to the

actions of the "students," not to Plaintiff in particular.  Ex. 2.  Although it expressed a preliminary

opinion that the students' behavior was "opposed to the Church's teachings on the dignity and

respect of the human person," Ex. 2, the statement also made clear that the Diocese's investigation

had not concluded and that expulsion was only one possible penalty.  It in no way suggested that

the church or school had pronounced a verdict as to Plaintiff.

### C.      The Post Articles Do Not Affirmatively Endorse the Implied Charges.

Plaintiff cannot state a claim based on the alleged implied meanings unless he can point to

"affirmative evidence" on the face of the publication that the Post "intended or endorsed" that

meaning.  *White v. Fraternal Order of Police*, 909 F.2d 512, 520–21 (D.C. Cir. 1990); *see also,*

*e.g.*, *Nichols v. Moore*, 477 F.3d 396, 402 (6th Cir. 2007).  Plaintiff responds, in a footnote, that

this rule does not apply because his claim does not "arise from the juxtaposition of *true fact*s," but

rather from the "reasonable meaning of *false statements* themselves."  Opp. 27 n.16 (second

emphasis added).  Plaintiff, however, has not identified a single false statement of fact in the Post's

news coverage, much less a false statement about him.  *See* Section II, *infra*.

To the extent, then, that Plaintiff seeks to recover for implied meanings, he must allege that

the Post "intended or knew of the implications that the plaintiff is attempting to draw," *Compuware*

*Corp. v. Moody's Inv'rs Servs.*, 499 F.3d 520, 528 (6th Cir. 2007), and that such an intent is

apparent on the face of the publication, *White*, 909 F.2d at 520.  Plaintiff's own brief demonstrates

why this showing is necessary.  His opposition acknowledges that "nothing" about his encounter

with Phillips would have been newsworthy "absent the express themes of race, politics, and

abortion."  Opp. 33.  But when the news coverage touches on "lightning-rod" issues like these, *id.*,

readers will naturally form judgments about the people and events at issue based on their own assumptions and political leanings. The Post cannot be held liable for defamatory inferences that a reader might draw from the simple fact that Plaintiff wore a MAGA cap or identified with certain political causes. *See Biro v. Conde Nast*, 883 F. Supp. 2d 441, 468 (S.D.N.Y. 2012) ("an unstated inference that may arise in a reader's mind after reading [disclosed] facts is also protected as an implicit expression of the author's opinion"). For Plaintiff to state a claim, he must point to something on the face of the publication that suggests the Post endorsed such an inference. He has not attempted to carry that burden here.

To take just one example, there is nothing on the face of any of these articles to suggest that the Post intended to accuse Plaintiff in particular of being a racist. If any reader were to come to that assessment, it would be because of the assumptions and ideological predispositions that the reader brought to bear in judging what happened on the steps of the Lincoln Memorial—not anything that the Post affirmatively suggested in its accounts. The implications are therefore not actionable. *See White*, 909 F.2d at 520–21; *Nichols*, 477 F.3d at 402.

### D.      Three of the Four Defamatory Gists Are Opinions Not Provably False.

Plaintiff cannot state a claim for three of the allegedly implied meanings for another reason—whether Plaintiff "instigated" the confrontation, engaged in "racist" conduct, or violated the fundamental standards of his religious community and school, such that he should be expelled, are matters of subjective judgment or opinion that are not provably false.

1.      Reasonable minds can disagree, based even on Plaintiff's version of events, whether the students or Phillips triggered the confrontation at the Lincoln Memorial. Plaintiff alleges that *Phillips* was the instigating party because he "approached the students and inserted himself into their area," Compl. ¶ 53(b)—a fact that the Post accurately reported. But Plaintiff also acknowledges that the students were involved in rowdy exchanges with the Hebrew Israelites

that attracted Phillips' attention in the first place.  *Id.* ¶ 53(c); *id* ¶ 65 (minutes 2:38–2:54).

Sandmann asserts that these cheers were intended as a salutary response to the taunts the Hebrew

Israelites were shouting at the students.  *Id.* ¶ 24; Ex. A.  But Phillips saw the students' behavior

as creating a dangerous situation.  And other spectators unfamiliar with the school's cheers also

saw them in that light.  The eyewitnesses interviewed by the Post described "an aggressive display

of physicality," Exs. D, E, F, and "a mob mentality," Exs. I, J.  That many of the students were

wearing MAGA hats seemed only to sharpen the outsiders' perceptions.  Compl. ¶ 65 (minutes

3:05–3:08).  In short, the incident is, at the very least, susceptible of competing interpretations,

and implied judgment of who instigated the confrontation is not provably false.

2.      As the Post argued in its opening brief, accusations that a person is racist are widely

understood to be expressions of opinion.  Plaintiff counters that "when an article characterizes

specific factual occurrences as racist, the line between protected opinion and actionable fact is

crossed."  Opp. 39–40.  But courts have widely recognized that defendants cannot be held liable

for expressing an opinion about "specific occurrences," so long as the defendant provides a

substantially true account of what those occurrences were.  As long as readers understand the

factual basis for an opinion, they can decide for themselves whether they agree with the publication

or not.  *See Moldea v. N.Y. Times Co.*, 15 F.3d 1137, 1144–45 (D.C. Cir. 1994); *Yancey v.

Hamilton*, 786 S.W.2d 854, 857 (Ky. 1989); Restatement (Second) of Torts § 566 cmt. c; *see also

Ward v. Zelikovsky*, 643 A.2d 972, 982–85 (N.J. 1994) ("Most courts that have considered whether

allegations of racism, ethnic hatred or bigotry are defamatory have concluded for a variety of

reasons that they are not.") (citing cases).

In this case, it is substantially true that Plaintiff did not move out of Phillips' way as his

fellow students did; that he instead stood face-to-face with this Native American elder; and that he

personally joined an activity—the tomahawk chop—that he concedes "many" consider "mocking" of Native Americans.  Whether those facts support the assessment that Plaintiff's conduct was racist is perhaps debatable, but it is certainly not a matter of objective fact.  Indeed, even if one were to expressly state that this conduct was racist, which the Post did not do, that would be a protected statement of opinion based on disclosed facts.  *See Frascatore v. Blake*, 344 F. Supp. 3d 481, 488 (S.D.N.Y. 2018) (holding that defendant's statement that he "experienced the effects of racism firsthand" was protected opinion because defendant "disclose[d] the facts on which his opinion is based"); *Ratajack v. Brewster Fire Dep't*, 178 F. Supp. 3d 118, 165 (S.D.N.Y. 2016) (similar).  Here, the Post can hardly be held liable for an opinion that it did not even suggest.

3.      Finally, Plaintiff has no right to relief for the supposed defamatory "gist" that he "violated the fundamental standards of his religious community" and of his Catholic school.  Compl. ¶ 120.  As an initial matter, the Court cannot constitutionally inquire into the tenets of Plaintiff's faith or adjudicate whether he did, in fact, violate the standards of his religious community.  *See Dermody*, 530 S.W.3d at 474 (holding that the court "cannot" review church's disciplinary determinations in adjudicating a libel claim); *see also Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 185–86 (2012) ("whenever the questions of discipline . . . have been decided by the highest of the church judicatories . . . the legal tribunals must accept such decisions as final" (brackets omitted)).  But even if that were a legitimate inquiry, the question is obviously one of opinion—an opinion, moreover, that was expressed by Plaintiff's own Diocese.  *See* Post Br. 39.

## CONCLUSION

For the reasons given here and in the opening brief, the Complaint should be dismissed.

/s/ *Kevin T. Baine*

| | |
|---|---|
| Philip W. Collier | Kevin T. Baine (*pro hac vice*) |
| Bethany A. Breetz | Thomas G. Hentoff (*pro hac vice*) |
| STITES & HARBISON, PLLC | Nicholas G. Gamse (*pro hac vice*) |
| 400 West Market Street, Suite 1800 | Katherine Moran Meeks (*pro hac vice*) |
| Louisville, KY 40202 | Whitney G. Woodward (*pro hac vice*) |
| Telephone:  (502) 587-3400 | WILLIAMS & CONNOLLY LLP |
| | 725 Twelfth Street, N.W. |
| William G. Geisen | Washington, DC 20005 |
| STITES & HARBISON, PLLC | Telephone:  (202) 434-5000 |
| 100 East RiverCenter Boulevard | |
| Suite 450 Covington, KY 41011 | *Counsel for The Washington Post* |
| Telephone:  (859) 652-7601 | |

*Counsel for The Washington Post*

June 4, 2019

**CERTIFICATE OF SERVICE**

I hereby certify that on June 4, 2019, I electronically filed the foregoing Reply Brief in support of the Washington Post's Motion to Dismiss with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to registered CM/ECF participants.

/s/ Kevin T. Baine
*Counsel for The Washington Post*

22