UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

| | |
|---|---|
| NICHOLAS SANDMANN, by and through his parents and natural guardians, TED SANDMANN and JULIE SANDMANN,<br><br>      Plaintiffs,<br><br>v.<br><br>WP COMPANY LLC, d/b/a THE WASHINGTON POST,<br><br>      Defendant. | No. 2:19-cv-19-WOB-CJS |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION
FOR RELIEF FROM JUDGMENT, FOR RECONSIDERATION, AND FOR
LEAVE TO AMEND**

Philip W. Collier
Bethany A. Breetz
STITES & HARBISON, PLLC
400 West Market Street, Suite 1800
Louisville, KY 40202
Telephone: (502) 587-3400

William G. Geisen
STITES & HARBISON, PLLC
100 East RiverCenter Boulevard
Suite 450
Covington, KY 41011
Telephone: (859) 652-7601

*Counsel for The Washington Post*

Kevin T. Baine (*pro hac vice*)
Thomas G. Hentoff (*pro hac vice*)
Nicholas G. Gamse (*pro hac vice*)
Katherine Moran Meeks (*pro hac vice*)
Whitney G. Woodward (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000

*Counsel for The Washington Post*

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

STANDARD OF REVIEW .....................................................................................3

ARGUMENT .........................................................................................................5

I.   The Court Correctly Held, and the Proposed Amendment Does Not Alter, that Many of the Statements at Issue Are Not Of and Concerning the Plaintiff ....................................................................................................5

II.  The Court Correctly Held, and the Proposed Amendment Does Not Alter, that Many of the Statements Are Nonactionable Opinion. ....................8

   A.   The Editor's Notes Do Not Bolster Plaintiff's Position that the Post Published a False Statement of Fact .........................................9

   B.   The Court Did Not Make a Credibility Determination as to Nathan Phillips ..............................................................................12

III. The Court Correctly Held, and the Proposed Amendment Does Not Alter, that the Challenged Statements Are Not Defamatory ...........................14

   A.   The Court Considered the Statements in the Context of the Articles in their Entirety ................................................................15

   B.   Online and Social Media Commentary May Not Be Considered in Determining Whether the Articles Are Capable of a Defamatory Meaning ...............................................................16

   C.   Plaintiff Has Not Pleaded Special Damages or Defamation Per Quod .............................................................................................18

IV.  Plaintiff Ignores Alternative Bases for Dismissal, Which Separately Establish Futility ..............................................................................20

CONCLUSION.......................................................................................................21

# TABLE OF AUTHORITIES

## CASES

*Berry v. Schmitt*, 688 F.3d 290 (6th Cir. 2012)..............................................................11

*Chambers v. Sepanek*, 2019 WL 2144802 (E.D. Ky. May 16, 2019)..............................19

*Church of Scientology Int'l v. Time Warner, Inc.*, 806 F. Supp. 1157
(S.D.N.Y. 1992).................................................................................................................7

*Cline v. T.J. Samson Cmty. Hosp.*, 2016 WL 3226325
(Ky. Ct. App. June 3, 2016). ..........................................................................................12

*CMI, Inc. v. Intoximeters, Inc.*, 918 F. Supp. 1068 (W.D. Ky. 1995)............................17

*Compuware Corp. v. Moody's Inv'rs Servs., Inc.*, 499 F.3d 520 (6th Cir. 2007) ........12

*Croce v. New York Times Co.*, 930 F.3d 787 (6th Cir. 2019) ........................................18

*Dermody v. Presbyterian Church (U.S.A.)*, 530 S.W.3d 467 (Ky. Ct. App. 2017)................19, 21

*Digest Publ'g Co. v. Perry Publ'g Co.*, 284 S.W.2d 832 (Ky. 1955)............................17

*Doshi v. Gen. Cable Corp.*, 2015 WL 2229233 (E.D. Ky. May 12, 2015) ............................1, 4, 5

*Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264 (6th Cir. 1998) ....................................4

*Gahafer v. Ford Motor Co.*, 328 F.3d 859 (6th Cir. 2003)......................................16, 18

*Hammer v. City of Osage Beach*, 318 F.3d 832 (8th Cir. 2003)....................................13

*Holt v. Cox Enters.*, 590 F. Supp. 408 (N.D. Ga. 1984) ...............................................7

*Janklow v. Newsweek, Inc.*, 788 F.2d 1300 (8th Cir. 1986)..........................................11

*KTRK TV, Inc. v. Robinson*, 409 S.W.3d 682 (Tex. App. 2013) ...................................19

*Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612 (6th Cir. 2010) ...................3, 4

*Macineirghe v. County of Suffolk*, 2015 WL 4459456 (E.D.N.Y. July 21, 2015)........................11

*McCall v. Courier-Journal & Louisville Times Co.*, 623 S.W.2d 882 (Ky. 1981)......................13

*McCurry ex rel. Turner v. Adventist Health Sys./Sunbelt, Inc.*, 298 F.3d 586
(6th Cir. 2002)...................................................................................................................4

*McGuire v. Warden, Chillicothe Corr. Inst.*, 738 F.3d 741 (6th Cir. 2013) ...................4

*McPherson v. Kelsey*, 125 F.3d 989 (6th Cir. 1997)...............................................19

*Michigan Flyer LLC v. Wayne Cty. Airport Auth.*, 860 F.3d 425 (6th Cir. 2017)..........................4

*Milkovich v. Lorain J. Co.*, 497 U.S. 1 (1990)...............................................13

*Moldea v. N.Y. Times Co.*, 15 F.3d 1137 (D.C. Cir. 1994)...........................................13

*Newton v. NBC*, 930 F.2d 662 (9th Cir. 1990)...........................................11

*Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299 (6th Cir. 2000).........................................21

*Potomac Valve & Fitting Inc. v. Crawford Fitting Co.*, 829 F.2d 1280 (4th Cir. 1987)...........................................13

*Riverview Health Institute LLC v. Medical Mut. Of Ohio*, 601 F.3d 505 (6th Cir. 2010)...........................................5

*Roche v. Home Depot U.S.A.*, 197 F. App'x 395 (6th Cir. 2006).........................................*passim*

*Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367 (6th Cir. 1998)...........................................4

*Seaton v. TripAdvisor LLC*, 728 F.3d 592 (6th Cir. 2013) ...........................................9

*Stern v. Cosby*, 645 F. Supp. 2d 258 (S.D.N.Y. 2009) ...........................................20

*Towles v. Travelers Ins. Co.*, 137 S.W.2d 1110 (Ky. 1940)...........................................17

*Turner v. Wells*, 879 F.3d 1254 (11th Cir. 2018)...........................................9

*United States v. Brown*, 2019 WL 3068440 (E.D. Ky. July 12, 2019)...........................................5

*United States v. Reyes*, 307 F.3d 451 (6th Cir. 2002) ...........................................4

*Va. Citizens Defense League v. Couric*, 910 F.3d 780 (4th Cir. 2018)...........................................9

*Walker v. Tucker*, 95 S.W. 138 (Ky. 1927)...........................................20

*Wheeler v. Twenty-First Century Fox*, 322 F. Supp. 3d 445 (S.D.N.Y. 2018)...........................................9, 10

*Windisch-Muhlhauser Brewing Co. v. Bacon*, 53 S.W. 520 (Ky. 1899) ...........................................20

*Yancey v. Hamilton*, 786 S.W.2d 854 (Ky. 1989)...........................................18

*Zeran v. Diamond Broad., Inc.*, 203 F.3d 714 (10th Cir. 2000) ...........................................20

## CONSTITUTION, STATUTES, AND RULES

U.S. Const. amend. I ............................................................................................ *passim*

Federal Rules of Civil Procedure 12 ................................................................... *passim*

Federal Rules of Civil Procedure 15 ........................................................................3, 4

Federal Rules of Civil Procedure 59 ...........................................................3, 4, 12, 15

Federal Rules of Civil Procedure 60 ..................................................................3, 4, 15

Federal Rules of Civil Procedure 61 ...............................................................................5

## OTHER AUTHORITIES

Restatement (Second) of Torts § 559 ...........................................................................17

Restatement (Second) of Torts § 563 ...........................................................................17

Restatement (Second) of Torts § 566 ...........................................................................13

Restatement (Second) of Torts § 614 ...........................................................................16

Robert D. Sack, *Sack on Defamation* (5th ed. 2019) ..............................................9, 11

## INTRODUCTION

After full briefing and a lengthy oral argument, this Court issued a well-reasoned, 36-page opinion granting the Post's motion to dismiss with prejudice on multiple alternative grounds: many of the statements at issue were not "of and concerning" the Plaintiff; many were statements of opinion protected under the First Amendment and not capable of being proven false; and none of the statements was defamatory *per se*.  As the Court's illustrative chart makes plain, each of the statements at issue was dismissed for at least two of those reasons, and the majority were held nonactionable on all three grounds.  It was entirely appropriate for the Court to grant dismissal with prejudice under these circumstances.

Notwithstanding the multiple grounds for the Court's decision, Plaintiff now seeks the "extraordinary remedy" of post-judgment reconsideration.  *Doshi v. Gen. Cable Corp.*, 2015 WL 2229233, at *2 (E.D. Ky. May 12, 2015) (denying reconsideration of 12(b)(6) dismissal), *aff'd*, 823 F.3d 1032 (6th Cir. 2016).  None of the arguments he raises points to a manifest injustice that could justify such relief; many are simply attempts to "clarify" (that is, repeat) allegations and arguments from the original complaint and prior briefing.  Post-judgment motions, however, are "not . . . meant to allow a disappointed litigant to attempt to persuade the Court to change its mind" or "to re-argue a case."  *Id.* at *2–3 & n.2.  The minor issues Plaintiff identifies do not warrant reconsideration, and his proposed amendment is futile.

First, Plaintiff argues that the Court failed to consider in its "of and concerning" analysis that he was pictured in some of the Post's coverage.  If there was any error here, it was Plaintiff's, since the "true and correct" copies of the articles he attached to the complaint showed no such images or video.  In any case, amendment would be futile and would not change the Court's analysis.  The Court correctly held that *even where Plaintiff was named in the articles,* that did not mean that all of the statements were "of and concerning" him.  Plaintiff's motion entirely ignores

1

this ruling and amounts to little more than a rehash of his argument on group libel, which the Court correctly rejected.

Second, Plaintiff contends that the Court did not consider the Post's editor's notes concerning its coverage.  That argument ignores the extensive attention the notes were given in both the parties' briefing and at oral argument.  As the Post explained, the editor's notes do not establish that anything published was false or defamatory of the Plaintiff.  In his motion, Plaintiff specifically argues that the notes would affect only one holding:  that Phillips' statement that he was "blocked" was a nonactionable opinion.  But nothing in any editor's note undermines the Court's ruling on that issue—or its conclusion that the statement did not rise to the level of defamation.

Third, Plaintiff contends that the Court failed to consider certain "context" and online and social media commentary regarding the incident when evaluating whether the articles were defamatory *per se*.  As the Court recognized, however, the law is clear that "'[i]n determining whether a writing is libelous per se, *courts must stay within the four corners of the written communication*.'"  Op. 12 (emphasis added) (quoting *Roche v. Home Depot U.S.A.*, 197 F. App'x 395, 398 (6th Cir. 2006)).  That is precisely what the Court did here.  To the extent Plaintiff argues that the Court should consider online and social media commentary as extrinsic facts bearing on how the articles should be interpreted, that would amount to a claim of defamation *per quod*—and Plaintiff has not attempted to assert such a claim, much less pleaded the special damages necessary to support one (as the Court correctly held).[1]

---

[1] As explained below, Plaintiff's disclosure in his proposed amended complaint that he incurred $438 dollars in expenses to treat "emotional distress" is not an allegation of special damages.  *See infra* Section III(C); *see also* Op. 25 n.15 (citing cases).

2

Finally, Plaintiff entirely ignores alternative grounds for the Post's motion that the Court did not have occasion to address, such as substantial truth.  If anything, Plaintiff's proposed amendment only undermines his claim of falsity.  He now alleges that "many people consider the phrase 'Make America Great Again'—and particularly wearing a MAGA hat—to be the equivalent of a racist statement," going so far as to compare the hat to a "white hood."  Am. Compl. ¶ 197; Pl.'s Br. in Support of Mot. for Relief from Judgment ("Br.") 6.  But that allegation utterly destroys any claim that it was false for the Post to imply that he "engaged in racist conduct"— because there is no dispute that he was wearing the hat.

Plaintiff's arguments are meritless, his proposed amendment is futile, and he cannot overcome the multiple alternative bases for dismissal, especially on the "extraordinary" standard of review he faces here.  The motion should be denied.

## STANDARD OF REVIEW

Plaintiff contends that Federal Rule 15 requires that the Court "freely give leave" to amend his complaint "when justice so requires."  Br. 10.  But "when a Rule 15 motion comes after a judgment against the plaintiff, that is a different story."  *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010) (affirming the denial of Rule 15 motion after 12(b)(6) dismissal).  A plaintiff in this position is not entitled to amend his complaint unless he can first clear the high barriers established by Rules 59 or 60.  *Id.* at 616.  "In post-judgment motions to amend," therefore, "the Rule 15 and Rule 59 inquiries turn on the same factors," and courts "*must* consider the competing interest of protecting the finality of judgments and the expeditious termination of litigation."  *Id.* at 615–16 (emphasis added and brackets omitted).  "If a permissive amendment policy applied after adverse judgments, plaintiffs could use the court as a sounding board to discover holes in their arguments, then reopen the case by amending their

3

complaint to take account of the court's decision." *Id.* at 616; *see also Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998).

Relief under Rule 59(e) is warranted only in the limited circumstances where there is: "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Michigan Flyer LLC v. Wayne Cty. Airport Auth.*, 860 F.3d 425, 431 (6th Cir. 2017) (affirming 12(b)(6) dismissal). "The manifest injustice ground for grant of a Rule 59 motion is a catch-all provision, but not one meant to allow a disappointed litigant to attempt to persuade the Court to change its mind." *Doshi*, 2015 WL 2229233, at *3. "The Court has 'considerable discretion' in deciding whether to grant such a motion, and to do so is an 'extraordinary' remedy." *Id.* at *2 (denying Rule 15(a) and 59(e) motions).

Rule 60 imposes a "significantly higher" standard than that "applicable to a Rule 59 motion." *Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 268 (6th Cir. 1998). Here, Plaintiff claims "mistake, inadvertence, surprise or excusable neglect." Br. 8 (quoting Fed. R. Civ. P. 60(b)(1)). But these limited grounds for relief apply only "(1) when a party has made an excusable mistake or an attorney has acted without authority, or (2) when the judge has made a substantive mistake of law or fact in the final judgment or order." *United States v. Reyes*, 307 F.3d 451, 455 (6th Cir. 2002). Plaintiff also argues that Rule 60 may be invoked for "any other reason that justifies relief," Br. 8 (quoting Fed. R. Civ. P. 60(b)(6)), but this subsection applies "only in exceptional or extraordinary circumstances," and relief is limited to "unusual and extreme situations where principles of equity *mandate* relief," *McGuire v. Warden, Chillicothe Corr. Inst.*, 738 F.3d 741, 750 (6th Cir. 2013). "Such situations are rare, because almost every conceivable ground for relief is covered under the other subsections of Rule 60(b)." *McCurry ex rel. Turner v. Adventist Health Sys./Sunbelt, Inc.*, 298 F.3d 586, 595 (6th Cir. 2002).

In all cases, "harmless error cannot constitute a basis for 'vacating, modifying, or otherwise disturbing a judgment.'"   *United States v. Brown*, 2019 WL 3068440, at *2 (E.D. Ky. July 12, 2019) (quoting Fed. R. Civ. P. 61).   And, most importantly, it is well-established that "[a] court need not permit amendment of a complaint if the amendment would be futile."   *Doshi*, 2015 WL 2229233, at *4; *see also Riverview Health Institute LLC v. Medical Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010).

## ARGUMENT

### I.   The Court Correctly Held, and the Proposed Amendment Does Not Alter, that Many of the Statements at Issue Are Not Of and Concerning the Plaintiff.

The Court held that Plaintiff cannot recover for many of the statements challenged in his complaint because they are not "about" him specifically, but only about the large group of teens gathered at the Lincoln Memorial.   Op. 13–14, 25–27.   Plaintiff asserts that this holding was grounded in the "incorrect factual conclusion" that "there is no picture" of him in the First Article. Br. 11 (quoting Op. 13).   Convinced that the Court must have "misapprehended" his allegations, Plaintiff seeks leave to amend to "clarify" that the First Article and other online articles contained certain video depicting his standoff with Nathan Phillips.   Br. 8–10; Am. Compl. ¶¶ 251, 265, 288. His motion should be denied, however, because the Court has already considered and rejected the meritless argument that an article is about Plaintiff "*in its entirety*," Pl.'s Brief in Opp'n to Mot. to Dismiss ("Opp.") 22, simply because it identifies him in some way.

As an initial matter, Plaintiff can hardly blame the Court for saying that he was not pictured in the First Article.   The copy of the First Article he attached to his complaint, which he alleged to be a "true and correct copy," Compl. ¶ 113, contained no image of him.[2]   More importantly, the

---

[2] Plaintiff represents that he did not initially provide copies of the articles that included video stills because the Post's *corrections* policy makes it "difficult to locate versions of the articles as they were originally published."   Br. 12 (emphasis added).   As he did in his original briefing and at

Post's arguments for dismissal—and the Court's ruling—did not turn on the absence of a picture. The Post argued, and the Court agreed, that the group libel doctrine barred recovery to the extent Plaintiff's claim rested on statements referring only to the large group of teens at the Lincoln Memorial. Op. 13–14. Then as now, Plaintiff's arguments to the contrary are meritless.

It would be futile for Plaintiff to amend his complaint to allege that the Post's First, Second, and Fourth Articles "feature[d] Nicholas prominently by embedding the Viral Video." Am. Compl. ¶¶ 251, 265, 288.[3] According to Plaintiff, the Post's publication of the viral video satisfies the "of and concerning" requirement for those articles "*in [their] entirety*," Opp. 22, allowing him to recover for statements that on their face refer only to the large group of teens. As the Post explained in its briefing, however, no case supports this radical dismantling of the group libel doctrine. The cases cited by Plaintiff arose in a different factual setting—where publication of the plaintiff's photo arguably defamed him by falsely associating him with a scandal with which he had no involvement whatsoever. Post Reply Br. 5. They have no application here.

For all the reasons the Post outlined in its briefs, publication of Plaintiff's image does not definitively answer the "of and concerning" inquiry. Even where a news article identifies the plaintiff in some way, including by publishing a photo or video of him, courts must evaluate whether *each contested statement* refers to the plaintiff as an individual—or only to the group to

---

argument, Plaintiff misrepresents that policy. The Post's online policy says: "It is unnecessary to put notes on stories stating that a story has been updated unless there is a particular reason to note the addition of new information or other change." Routine updates do not constitute corrections.

[3] Plaintiff asserts incorrectly that his "proposed First Amended Complaint demonstrates very clearly that *all* of the Post's accusations include a 'picture' of Nicholas." Br. 2 (emphasis added). As the Post noted in its reply brief, however, the Third Article, published in print on January 20, 2019, includes *no image of Plaintiff whatsoever*. Post Reply Br. 5. Plaintiff has attached a copy of this article as it appeared in the Metro section to his amended complaint, and his own exhibit confirms that the article contained no photo or video still of Plaintiff. Am. Compl. Ex. I.

which he belongs.  *See, e.g.*, *Church of Scientology Int'l v. Time Warner, Inc.*, 806 F. Supp. 1157, 1161–64 (S.D.N.Y. 1992); *Holt v. Cox Enters.*, 590 F. Supp. 408, 411 (N.D. Ga. 1984); Post Reply Br. 2–6.  The Court properly undertook that statement-by-statement analysis here, concluding that references to "hat wearing teens," "the teens," "teens and other apparent participants," "a few people," "those who should listen most closely," and simply "they" were not references to Plaintiff in particular.  Op. 13.

Even with regard to the Sixth and Seventh Articles, which unlike the others identified Plaintiff *by name* (after Plaintiff publicly identified himself in a press statement), the Court correctly held "this simply means that *some* of the statements in these articles *may* be 'about' Sandmann."  Op. 27 (emphases added).  The Court went on to conclude that Phillips' assertion that he heard "students" saying "the Indians in my state are drunks or thieves" could not reasonably be understood to refer to Plaintiff in particular.  *Id.*  Just as naming Plaintiff was not dispositive in the Sixth and Seventh Articles, mere inclusion of his image does not conclusively resolve the "of and concerning" inquiry in his favor.

Plaintiff's motion fails to explain how the Post's alleged publication of the viral videos he identifies, *see* Am. Compl. ¶ 65, would change the meaning of the statements referring to "the teens," such that a reader might reasonably conclude those statements singled out Plaintiff in particular.  To the contrary, his own allegations concerning the viral videos undermine rather than support his "of and concerning" arguments.  Plaintiff alleges that these videos "did *not* show" him "engaging in any misconduct" or "uttering any words to Phillips."  Compl. ¶ 53; Am. Compl. ¶ 66.  By his own allegations, then, the videos gave the Post's readers no basis to conclude that Plaintiff was one of the teens who shouted "Build the wall!" or engaged in other "rambunctious" behavior attributed only to the group gathered at the Lincoln Memorial.

The viral videos arguably connect Plaintiff with only two of the statements in the First Article:  (1) that Plaintiff was the "one standing about a foot from" Phillips "wearing a relentless smirk" and (2) that he was the "guy in the hat" who, according to Phillips, "stood in my way and we were at an impasse.  He just blocked my way and wouldn't allow me to retreat."  But the first of those statements was not challenged in the complaint at all, and the second *was not dismissed on "of and concerning" grounds*.  Op. 13 & n.10 (holding that statements 1–3, 8, 13, and 15–17 were not "about" Plaintiff).[4]  As the Post did in its briefing, the Court assumed *arguendo* that the second statement referred to Plaintiff, and then went on to hold that it was nonactionable opinion and not defamatory in any event.  Op. 17–18, 21–22.  Plaintiff's proposed amendment thus does nothing to disturb the Court's conclusion that Plaintiff cannot maintain a defamation claim premised on the "blocked my way" statement.

## II.     The Court Correctly Held, and the Proposed Amendment Does Not Alter, that Many of the Statements Are Nonactionable Opinion.

Plaintiff contends that the Court incorrectly concluded many of the contested statements were nonactionable opinion because it (1) declined to consider the editor's notes and (2) overlooked his allegations that Phillips was an unreliable witness because of his history of political activism.  Neither argument has merit.

---

[4] The chart appended to the Court's opinion says that statement 10—which includes the "blocking" comment—was dismissed because it was "not 'about' Sandmann."  Because the Court did *not* dismiss the "blocking" comment on "of and concerning" grounds in the body of its opinion, the Post interprets this entry on the chart to refer to the portion of statement 10 that said "It was getting ugly."  The "ugly" remark plainly referred to the situation as a whole at that point, and not to Plaintiff or any other individual.

8

### A. The Editor's Notes Do Not Bolster Plaintiff's Position that the Post Published a False Statement of Fact.

Plaintiff argues that the Court erred in failing to "consider" the editor's notes that the Post attached to its motion to dismiss, Br. 14–16, but his brief mischaracterizes the Court's opinion and ignores what took place at oral argument. The Court stated simply that it did not "consider" the materials appended to the briefing to be part of the complaint—not that it ignored the parties' arguments concerning the relevance of the editor's notes. Op. 6. For the reasons thoroughly aired in the briefs and at the hearing, the editor's notes do not support Plaintiff's position that the Post published a false statement of fact about him, and his proposed amendment would be futile.

Plaintiff argues that the editor's notes affect only one specific holding: that Phillips stated an opinion when he asserted that Plaintiff "blocked my way." Br. 16. According to Plaintiff, the editor's notes show that the Post's journalists concluded that the "blocked" statement was one of fact. But whether a statement constitutes fact or opinion is a question of law for the Court, as the federal appeals courts have uniformly held. *See, e.g.*, *Turner v. Wells*, 879 F.3d 1254, 1262–63 (11th Cir. 2018); 1 Robert D. Sack, *Sack on Defamation* § 4:3.7 (5th ed. 2019) (collecting cases); *see also, e.g.*, *Seaton v. TripAdvisor LLC*, 728 F.3d 592, 601 (6th Cir. 2013) (affirming dismissal of defamation claim where statement was "protected, nonactionable opinion"). Nothing the Post said in a subsequent editor's note can have any bearing on that question of law. Indeed, as the Post has previously noted, courts have not hesitated to dismiss defamation claims as a matter of law even when a media defendant has published a correction or outright retraction. *See Va. Citizens Defense League v. Couric*, 910 F.3d 780, 783 (4th Cir. 2018) (affirming Rule 12(b)(6) dismissal of a defamation claim even though a journalist had issued a public statement acknowledging that a film contained a "misleading" segment that "did not accurately represent" the response of her interviewees); *Wheeler v. Twenty-First Century Fox*, 322 F. Supp. 3d 445, 454

9

(S.D.N.Y. 2018) (dismissing complaint on substantial truth grounds, even though news channel had retracted the report).

The editor's notes here are, in any event, entirely consistent with the Court's conclusion that Phillips was expressing a subjective opinion based on disclosed facts when he told the Post that the "guy in the hat . . . blocked my way." Op. 16–17. For example, the editor's notes appended to the First and Second Articles told readers that additional reporting had "allow[ed] for a more complete assessment of what occurred during the Jan. 18 incident." Am. Compl. ¶¶ 221–22. The notes made plain that this subsequent reporting included Plaintiff's own statement to the media, in which he asserted that he intended to defuse a tense situation, not to block Phillips from moving, when he stood silently in front of him. Compl. Ex. A; Am. Compl. Ex. A ("Statement of Nick Sandmann"). Plaintiff, in short, had a different perspective than Phillips. When the Post told its readers that later accounts "contradict[ed]" or "fail[ed] to confirm" that Phillips was blocked, it was making clear that other eyewitnesses, including Plaintiff, perceived the encounter differently—that the incident, in other words, generated a multiplicity of viewpoints. The editor's notes did not admit that Phillips made a false statement of fact.

As the Court observed, "Sandmann admits he was standing in silence in front of Phillips in the center of a confusing confrontation between the students and the Indigenous Peoples group." Op. 17. The other students who encircled Phillips were shouting, whooping, laughing, and jostling one another, as video of the incident shows. *See* Am. Compl. ¶ 65. It is easy to understand why Phillips might have felt blocked in these circumstances. He explained the reasons for his perception, and the Post was entitled to report this quintessential opinion based on disclosed facts,

even if Plaintiff or others might disagree with Phillips' view of what transpired.[5]  *See* Op. 17–18;
*see also Berry v. Schmitt*, 688 F.3d 290, 304 (6th Cir. 2012) ("Because the factual basis for the
opinion was stated, readers were free to form another, perhaps contradictory opinion from the same
facts.") (brackets omitted); *Macineirghe v. County of Suffolk*, 2015 WL 4459456, at *14 (E.D.N.Y.
July 21, 2015).

In any event, even if the Court were to conclude, as Plaintiff urges, that the "blocked my
way" statement was one of fact rather than opinion, that would not save his defamation claim.
That is because Plaintiff cannot possibly maintain that it is a *substantially false* statement of fact.
The editor's notes did not "admit" that the Post's description of the impasse between Plaintiff and
Phillips was false in any material respect.  *See* Post Reply Br. 10–11.  Indeed, Phillips' assertion
that Plaintiff "blocked my way" is entirely consistent with Plaintiff's pleaded version of the truth.
His own complaint alleges that he "did not move from where he was standing when Phillips
approached him."  Compl. ¶ 50(d); Am. Compl. ¶ 63(d); *see also* Post Reply Br. 8–9.  Plaintiff
might not have chosen to describe his actions as "blocking," but they fit within the ordinary
meaning of that word.  *See* II Oxford English Dictionary 299 (2d ed. 2001) ("[t]o obstruct or close
with obstacles . . . [t]o obstruct the way or course of").  And newspapers are not limited to
describing events in the sanitized language Plaintiff may have chosen if he were writing the report.
*See, e.g.*, *Newton v. NBC*, 930 F.2d 662, 685–86 (9th Cir. 1990); *Janklow v. Newsweek, Inc.*, 788
F.2d 1300, 1304 (8th Cir. 1986) (en banc).  In short, no matter whether the Court analyzes Phillips'

---

[5] Plaintiff argues that the Court applied the doctrine of neutral reportage, but that plainly is not the
case.  That doctrine privileges the news media to republish *a false statement of fact* when the public
has an interest in knowing that the statement was made.  *See* 1 *Sack on Defamation* § 7:3.5[D], at
7–54 (5th ed. 2019).  But here the Court held that Phillips was expressing an *opinion* that was not
provably true or false.

statement through the lens of opinion or substantial truth, the result is the same: Plaintiff has failed to plausibly allege that the "blocked" comment was a *provably false* statement of fact.

Nor, finally, would the statement that Plaintiff "blocked" Phillips be actionable even if it were materially false—because it was not defamatory, much less defamatory *per se*. As the Court held, "[t]here is nothing defamatory about being party to a stubborn 'impasse.'" Op. 22 (citing *Cline v. T.J. Samson Cmty. Hosp.,* 2016 WL 3226325, at *6 (Ky. Ct. App. June 3, 2016)).

### B. The Court Did Not Make a Credibility Determination as to Nathan Phillips.

Plaintiff contends that the Court erred in concluding that Phillips was a "credible witness" and "improperly presumed" his statements were "truthful." Br. 16. The Court did no such thing. It held that Phillips expressed his subjective perceptions of the encounter at the Lincoln Memorial and did "not convey 'actual, objectively verifiable facts.'" Op. 17 (quoting *Compuware Corp. v. Moody's Inv'rs Servs., Inc.*, 499 F.3d 520, 529 (6th Cir. 2007)). Plaintiff's new allegations that Phillips was unreliable because of his history of political activism and his exaggerated account of his Vietnam War record are thus entirely beside the point. The law does not recognize a claim for publishing an unreliable opinion.

Plaintiff contends that "Phillips fabricated his entire narrative of the January 18 incident." Br. 18. If by this Plaintiff simply means that Phillips' narrative consisted of false statements of fact, then the Court has already rejected this position, and Plaintiff has shown no "clear error of law" that might justify relief under Rule 59(e). What Plaintiff appears to be saying, however, is that Phillips communicated *an insincere opinion*. In Plaintiff's words, "Phillips did not actually *feel* threatened, he did not actually *feel* blocked, he was not *really* trying to defuse a tense situation," but simply said these things "to create a media controversy" that would serve a political agenda. *Id.* (emphases added). But the law of libel does not regulate the expression of insincere opinions. Courts and juries have no warrant to plumb the depths of a witness's soul to determine

12

whether he "was making truthful statements about his feelings." Br. 3. "Statements of opinion, even if made maliciously or insincerely, are afforded absolute privilege under the free speech clause of the First Amendment and cannot be actionable libel." *Hammer v. City of Osage Beach*, 318 F.3d 832, 842 (8th Cir. 2003); *see also Milkovich v. Lorain J. Co.*, 497 U.S. 1, 20 n.7 (1990) (observing that insincerity may be probative of malice, but not of falsity).[6]

Plaintiff's allegations concerning Phillips' credibility may be relevant to the fault element of his claim. Br. 19. But the parties made no argument about fault on the Post's motion to dismiss, and the Court did not reach that element, nor would it have had any conceivable basis to do so. Op. 7. The fault element involves, at a minimum, an inquiry into whether the defendant knew, or in the exercise of reasonable care should have known, it was publishing *a false statement of fact*. *See McCall v. Courier-Journal & Louisville Times Co.*, 623 S.W.2d 882, 895 (Ky. 1981). That question drops out of the case if the court holds, as it did here, that the defendant published a *nonactionable opinion*. Plaintiff's new allegations that "the Post was negligent in relying on Phillips' narrative," Br. 19, therefore cannot possibly salvage his claim.

Finally, even if Phillips' credibility were relevant to the issues before the Court, Plaintiff's allegations that Phillips is not credible because of his political views could not be sustained consistent with the First Amendment. Plaintiff's amended complaint alleges that Phillips was an unreliable source because he "has a well-documented history of leftist activism," Am. Compl.

---

[6] To the extent Plaintiff is suggesting that Phillips' opinion is actionable because it is based on undisclosed facts about his history of involvement in leftist causes or his exaggerated account of his Vietnam War service, that argument too is meritless. The law of libel requires the media defendant to disclose the facts *on which the opinion is based*, not facts that would bear on the supposed credibility of the source. *See, e.g.*, *Moldea v. N.Y. Times Co.*, 15 F.3d 1137, 1144–45 (D.C. Cir. 1994); *Potomac Valve & Fitting Inc. v. Crawford Fitting Co.*, 829 F.2d 1280, 1290 (4th Cir. 1987); Restatement (Second) of Torts § 566 cmt. c. The Post, in any event, reported that "Phillips . . . has long been active in the indigenous rights movement." Compl. Exs. E, F.

13

¶ 113, has "a known bias against President Trump," *id.* ¶ 114, has "participated in numerous marches and protests," *id.* ¶ 122, champions universal health care, *id.* ¶ 123, and participated in a protest of the Dakota Access Pipeline in which "[l]eft-wing Democratic Representative Alexandria Ocasio Cortez" also participated, *id.* ¶ 118 n.4.  These allegations may attract support at political rallies or on the opinion pages, but they have no bearing on a news source's credibility and, therefore, no place in a libel lawsuit.[7]

### III.   The Court Correctly Held, and the Proposed Amendment Does Not Alter, that the Challenged Statements Are Not Defamatory.

The Court correctly held that not a single one of the challenged statements concerning Plaintiff is defamatory.  Op. 20–27.  That holding alone compels dismissal of the entire case.

Notably, Plaintiff does *not* challenge the Court's defamatory meaning holding as to most individual statements.  For example, he does not seek reconsideration of the Court's holding that it was not defamatory to report that Phillips said Sandmann "blocked" his path and that they "were at an impasse."  Op. 22 ("There is nothing defamatory about being party to a stubborn 'impasse.'").

Rather, Plaintiff makes only two general arguments about information he says the Court failed to consider in evaluating whether the articles were defamatory.  First, he contends that the Court failed to consider the "context" of the articles, such as a reference in the Fourth Article to a President Trump tweet about Senator Elizabeth Warren.  Br. 20–23.  Second, he argues that the Court failed to consider extrinsic online comments in determining whether the articles were capable of a defamatory meaning.  Br. 23–25.  As discussed further below, each of these arguments is

---

[7] Plaintiff argues in a footnote that he should be permitted to amend his complaint to assert that an early version of the Fifth Article reported that a member of the group of teens "physically intimidated" Nathan Phillips, not simply that the group member "*appeared to* physically intimidate him."  But even the early version of the article still notes that this observation was based on an "image" of the Lincoln Memorial incident, allowing the Post's readers to decide for themselves whether they agreed with this characterization. *See* Am. Compl. ¶ 312(a).

14

erroneous by any standard, and does not come close to justifying "extraordinary" relief under Rules 59(e) or 60.

### A.   The Court Considered the Statements in the Context of the Articles in Their Entirety.

Plaintiff argues that the Court erred because it failed to analyze the allegedly defamatory statements "in context." Br. 20–21. But the Court expressly recognized that it "must analyze the article in its entirety and determine if its gist or sting is defamatory," Op. 20, and then correctly applied that standard, *see, e.g.*, Op. 23 ("The statements here, *in the context of the whole article*, are nothing like the words Kentucky courts have recognized as defamatory *per se*.") (emphasis added). Plaintiff asserts that the articles' references to MAGA hats and "Build the wall!" chants were capable of defamatory meaning. Br. 21. But the Court already considered and rejected his arguments, Op. 22–24, and Plaintiff's mere disagreement with the Court's extended, thoughtful analysis does not satisfy his burden under Rules 59(e) or 60.

Plaintiff's two arguments for amendment on this issue are meritless and futile. First, Plaintiff seeks to add allegations for "context," including that the Fourth Article noted the Lincoln Memorial incident happened less than a week after President Trump insulted Senator Warren in a tweet. Br. 21–22. But the Court has made clear that it considered the Fourth Article in its entirety when ruling on the Post's motion, and Plaintiff fails to explain how merely emphasizing different aspects of a publication the Court already reviewed would change the result. In any event, Plaintiff's theory is baseless. Contrary to his contention, the Fourth Article does not "compare[] Nicholas' actions to President Trump's tweet." Br. 22. And even if it did, it would not be defamatory to compare Plaintiff to the President of the United States when Plaintiff chose to publicly affiliate himself with the President by wearing a MAGA hat. *See* Op. 23 (citing cases).

15

In short, Plaintiff cannot save his case by invoking a spat between President Trump and one of his political opponents.

Second, Plaintiff proposes to supplement his complaint with an allegation that the online version of the First Article on the Post website *now* features hyperlinks to other stories that he says have "racist themes."  Br. 22–23; Am. Compl. ¶ 207.  But no reasonable reader would discern an article's meaning based on separate hyperlinks to articles about completely unrelated subjects that are self-evidently not of and concerning the plaintiff,[8] and Plaintiff cites no authority in which a court has ever done so.

### B.   Online and Social Media Commentary May Not Be Considered in Determining Whether the Articles Are Capable of a Defamatory Meaning.

Plaintiff also argues that the Court should have considered various online and social media commentary as evidence that the Post articles were construed as having a defamatory meaning, and he seeks to amend his complaint in support of this theory.  Br. 23–24.  But the question whether a publication is capable of a defamatory meaning is a question of law for the Court, and commentary following the Post's coverage has no bearing on that question.

It is for the Court to decide, as a matter of law, "(a) whether a communication is capable of bearing a particular meaning, and (b) whether that meaning is defamatory."  Restatement (Second) of Torts § 614.  And in particular, "[w]hether a particular communication is actionable per se is a question of law to be determined *by the courts*."  *Gahafer v. Ford Motor Co.*, 328 F.3d 859, 861 (6th Cir. 2003) (emphasis added) (granting motion to dismiss); *Roche v. Home Depot U.S.A.*, 197 F. App'x 395, 398 (6th Cir. 2006) (similar).  "'To be libelous per se the defamatory words must be of such a nature that *courts can presume as a matter of law* that they do tend to

---

[8] *See, e.g.*, Am. Compl. ¶ 207 (hyperlink to an article captioned "A black R&B artist hoped singing for Trump would build 'a bridge.'  It derailed her career instead.")

degrade or disgrace [the plaintiff], or hold him up to public hatred, contempt or scorn.'"  Op. 22 (emphasis added) (quoting *Digest Publ'g Co. v. Perry Publ'g Co.*, 284 S.W.2d 832, 834 (Ky. 1955)); *see also, e.g.*, *CMI, Inc. v. Intoximeters, Inc.*, 918 F. Supp. 1068, 1083 (W.D. Ky. 1995); *Towles v. Travelers Ins. Co.*, 137 S.W.2d 1110, 1111 (Ky. 1940).

Plaintiff appears to be arguing that the Court should examine online commentary to determine whether the Post articles are capable of a defamatory meaning.  But such comments have no bearing on the question whether the articles are capable of a defamatory meaning.  That is a question of law for the Court to decide; it does not turn on extrinsic evidence.  And even if the question were one of fact, it would not be determined by reference to social media comments. "The words must be given their ordinary, natural meaning as defined by the average lay person." *Roche*, 197 F. App'x at 398.  As this Court explained, "[t]he fact that a communication tends to prejudice another in the eyes of even a substantial group is not enough" if the interpretation is "an unreasonable construction."  Op. 12 (quoting Restatement (Second) of Torts § 559 cmt. e and *id.* § 563 cmt. c).  Comments on social media and elsewhere hardly show how the average, reasonable person would construe an article.  Those who post comments may or may not have read an article in its entirety—if they even read it at all—and may be expressing views based on information well beyond its four corners.  As Plaintiff himself acknowledges, the Post was far from the only media outlet covering the Lincoln Memorial incident: "other members of the mainstream media, individuals tweeting on Twitter, church officials, celebrities, and politicians" had also weighed in, Am. Compl. ¶ 193, including many before the Post had published its first article, Post Br. in Support of Mot. to Dismiss ("Post Br.") 3–4 & n.1–3.

Plaintiff argues that "'where the words at issue are capable of more than one meaning, as they are here, the jury should decide which of the meanings a recipient of the message would

attribute to it.'"  Br. 24 (quoting *Yancey v. Hamilton*, 786 S.W.2d 854, 858 (Ky. 1989)).  But he misses the point; that principle obviously does not change the fact that the *Court* is obliged to evaluate in the first place whether the statement is legally capable of a defamatory meaning.  It was the Court's gatekeeping function to make that determination as a matter of law, and it did so. *Gahafer*, 328 F.3d at 861; *Roche*, 197 F. App'x at 398.

In a recent and illustrative defamation case, the Sixth Circuit declined to consider reader comments when evaluating the defamatory meaning of a controversial article.  In *Croce v. New York Times Co.*, a scientist sued the New York Times for defamation over an unflattering article that prompted hundreds of "harsh" online comments.  930 F.3d 787, 791–92 (6th Cir. 2019).  The scientist argued that the comments showed "reasonable readers of the Article understood it to mean that Dr. Croce was guilty of 'years of ethics charges,' and was therefore a 'con man,' a 'fraud,' a 'crook,' a 'liar,' a 'cockroach,' a 'murderer,' and a scientist 'guilty of scientific misconduct.'"  Br. of Appellant, 2019 WL 486638, at *12 (quoting comments); *see also id.* at *44 ("The comments from the Article's readers indisputably confirm that they naturally and universally understood the Article to be defamatory (not innocently) regarding Dr. Croce.").  Nevertheless, the Sixth Circuit affirmed the 12(b)(6) dismissal, making its own determination as to how a "reasonable reader" would interpret the article, without reference to the comments.  The Court concluded that "a reasonable reader would not interpret this article, considering it as a whole, to be defamatory." *Croce*, 930 F.3d at 796.  That is precisely what the Court did here.

### C.      Plaintiff Has Not Pleaded Special Damages or Defamation Per Quod.

To the extent that Plaintiff argues that the Court should have considered extrinsic online and social media comments as providing the background or "context" of the Post Articles, his argument fails for another reason.  As the Court correctly held, such "extrinsic evidence of context or circumstances outside the four corners of the article[s]" would amount to a claim of "libel *per*

*quod*," which Plaintiff has not attempted to state.  Op. 21; *see also Roche*, 197 F. App'x at 398 ("In determining whether a writing is libelous per se, *courts must stay within the 'four corners' of the written communication*.") (emphasis added); *KTRK TV, Inc. v. Robinson*, 409 S.W.3d 682, 691 (Tex. App. 2013) (declining to consider "third-party comments" on a libel *per se* theory).

This Court correctly held that Plaintiff failed to allege special damages, as he must to state a claim for libel *per quod*.  Op. 25 n.15.  Plaintiff's proposed Amendment alleges that he incurred $438 for "medical treatment for emotional and mental distress."  Am. Compl. ¶ 402.  But Plaintiff does not even attempt to argue that this *de minimis* expense is sufficient to support a claim of special damages.  His motion does not mention "special damages" or "*per quod*" defamation even once—it is entirely focused upon a *per se* theory.  He has thus waived any argument that this new allegation could sustain a claim for libel *per quod*.  *See, e.g.*, *Chambers v. Sepanek*, 2019 WL 2144802, at *2 (E.D. Ky. May 16, 2019) ("'[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.'") (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)).  Any such argument would be meritless in any event, for two reasons.

First, as this Court correctly explained, claims for "emotional distress" "are not special damages."  Op. 25 n.15 (citing cases).  This is so because special damages must quantify "*actual injury to reputation*."  *Dermody v. Presbyterian Church (U.S.A.)*, 530 S.W.3d 467, 475 (Ky. Ct. App. 2017) (emphasis added).  Plaintiff's alleged medical expenses are not a measure of his reputational injury; at most they measure his mental anguish.  It is blackletter law, both in Kentucky and across the country, that such expenses do not qualify as special damages.  "As the law gives no direct remedy for outraged feelings or sentiments, *a sickness induced by mental*

*distress . . . and expense for medical attendance, does not constitute special damages*." *Windisch-Muhlhauser Brewing Co. v. Bacon*, 53 S.W. 520, 520 (Ky. 1899) (emphasis added); *see also, e.g.*, *Walker v. Tucker*, 95 S.W. 138, 139 (Ky. 1927) ("[M]ental suffering alone is not sufficient to show special damages that will support an action for words not actionable per se."); *Zeran v. Diamond Broad., Inc.*, 203 F.3d 714, 718 (10th Cir. 2000) ("Emotional distress is not a form of special damages."); *Stern v. Cosby*, 645 F. Supp. 2d 258, 288 n.1 (S.D.N.Y. 2009) ("[S]pecial damages must flow directly from the injury to reputation caused by the defamation, not from the effects of the defamation. A doctor's bill for treating mental anguish is not pecuniary loss, and therefore does not constitute special damages.") (internal citation omitted). That is dispositive here, as the Court correctly held. Op. 25 n.15.

Second, even if medical expenses for emotional distress could qualify as special damages, $438 is simply not material enough to support a claim. As the Tenth Circuit held in a similar case, "Plaintiff's *de minimis* medical expenses, consisting of one visit to his physician . . . are insufficient to support the cause of action. Under the principle of *de minimis non curat lex*, the *de minimis* doctrine, the law does not care for, or take notice of, very small or trifling matters." *Zeran*, 203 F.3d at 718 (affirming dismissal for failure to plead defamation *per quod*); *see also Stern*, 645 F. Supp. 2d at 288 n.1 (declining to recognize a $500 doctor's bill as special damages).

Because Plaintiff has failed sufficiently to allege special damages, he cannot state a claim for libel *per quod*.

## IV.   Plaintiff Ignores Alternative Bases for Dismissal, Which Separately Establish Futility.

Finally, Plaintiff's motion should be denied because it does not address alternative grounds for dismissal that the Court had no occasion to reach.

First, the Post argued in its motion papers that many of the statements at issue are substantially true. *See* Post Br. 20–22, 26, 31, 33, 38, 44; Post Reply Br. 7–12; Post Chart, ECF

No. 37-1.  In one respect, Plaintiff's proposed amendment provides further support for that contention.  The amended complaint alleges that "many people consider the phrase 'Make America Great Again'—and particularly wearing a MAGA hat—to be the equivalent of a racist statement." Am. Compl. ¶ 197; *see also* Br. 6 (arguing that "many people today consider the MAGA cap . . . to be explicitly racist").  But it is a central and undisputed fact of this case that Plaintiff was himself wearing a MAGA cap.  Compl. ¶ 3; Am. Compl. ¶ 3.  If "many people today consider" Plaintiff's hat to be "explicitly racist," then he cannot show that it was substantially false for the Post allegedly to convey the gist that he "engaged in racist conduct" when wearing it.  *See Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 312 (6th Cir. 2000) ("[I]n defending against a defamation action, it is sufficient for the defendant to show that the imputation is substantially true, or as it is often put, to justify the 'gist,' the 'sting,' or the substantial truth of the defamation.").

Second, as the Post argued previously, Plaintiff's challenge to the Post's report of the Diocese's initial statement runs afoul of the First Amendment.  In *Dermody*, which the Court cited extensively, the Kentucky Court of Appeals held that it could not evaluate the plaintiff minister's claim that he was defamed by a church statement that said he had committed ethics violations.  530 S.W.3d at 474.  So too here.  Plaintiff cannot recover for the claimed defamatory "gist" that he "violated the fundamental standards of his religious community" and of his Catholic school.  *See* Am. Compl. ¶¶ 268, 278–79, 292–93, 322–23, 331–32.

## CONCLUSION

For the foregoing reasons, the Court should deny the motion in its entirety.


/s/ *Kevin T. Baine*
_____

| | |
|---|---|
| Philip W. Collier | Kevin T. Baine (*pro hac vice*) |
| Bethany A. Breetz | Thomas G. Hentoff (*pro hac vice*) |
| STITES & HARBISON, PLLC | Nicholas G. Gamse (*pro hac vice*) |

400 West Market Street, Suite 1800
Louisville, KY 40202
Telephone:  (502) 587-3400

William G. Geisen
STITES & HARBISON, PLLC
100 East RiverCenter Boulevard
Suite 450 Covington, KY 41011
Telephone:  (859) 652-7601

*Counsel for The Washington Post*

September 13, 2019

Katherine Moran Meeks (*pro hac vice*)
Whitney G. Woodward (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone:  (202) 434-5000

*Counsel for The Washington Post*

22

**CERTIFICATE OF SERVICE**

I hereby certify that on September 13, 2019, I electronically filed the foregoing Response in Opposition to Plaintiff's Motion for Relief from Judgment, for Reconsideration, and for Leave to Amend with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to registered CM/ECF participants.

/s/ Kevin T. Baine
*Counsel for The Washington Post*