UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

| | |
|---|---|
| NICHOLAS SANDMANN, BY AND THROUGH HIS PARENTS AND NATURAL GUARDIANS, TED SANDMANN AND JULIE SANDMANN,<br><br>             Plaintiffs,<br><br>v.<br><br>WP COMPANY LLC, D/B/A THE WASHINGTON POST,<br><br>             Defendant. | No. 2:19-cv-19-WOB-CJS |

**RESPONSE TO PLAINTIFF'S NOTICE OF FILING OF EXHIBITS (DVDS) AND DEFENDANT'S NOTICE OF FILING OF ADDITIONAL VIDEO**

The Court dismissed each of the statements at issue in this case on two or more independent grounds: they were not "about" plaintiff, they were not defamatory, or they consisted of protected opinion. The Court correctly approached each of these questions by asking how a reasonable reader would interpret the Post articles as written, without reference to extrinsic facts. Op. 12. The seven videos that Plaintiff submitted to the Court provide no basis for reopening that judgment because, with one exception, Plaintiff does not allege that these videos were even published by the Post. Videos allegedly circulated by third parties have no bearing on how a reasonable reader would understand the Post articles themselves. And that is the only issue before the Court.

Among the seven videos Plaintiff submitted to the Court, the only one allegedly published by the Post is the one identified as the "viral video" or "Taitano video," attached to Plaintiff's

submission as DVD Ex. 1.[1] Plaintiff argues that the Court concluded that the challenged statements were not "about" him only because it disregarded this video, which he describes as "the primary mechanism through which the Post identified" him. Pl.'s Br. in Support of Mot. for Relief from Judgment ("Pl.'s Br."), Dkt. 49-1, at 11. But this video connects Plaintiff to only one of the statements challenged here: it shows he was the "guy in the hat" whom Nathan Phillips alleged "blocked my way and wouldn't allow me to retreat." Compl. Exs. D, E, F. The Post always has acknowledged that this statement was about Plaintiff, *see* Post Br. in Support of Mot. to Dismiss ("Post Br."), Dkt. 27-1, at 20, and the Court did not dismiss it on "of and concerning" grounds, Op. 13, 17, 22. The Taitano video thus does nothing to change the Court's ruling that the majority of statements at issue concerned the large group of teenagers, not Plaintiff in particular.

At the hearing on Plaintiff's motion for relief from judgment, the Court suggested that the new video evidence might be relevant to whether Phillips's statement that he was "blocked" and not allowed "to retreat" was an expression of fact or opinion. Tr. Oral Arg. 14, 29.[2] Respectfully, that suggestion is incorrect. Whether a statement is one of fact or opinion is a question of law that the Court must decide based on its careful evaluation of the article in its entirety. *See* 1 Robert D. Sack, *Sack on Defamation* § 4:3.7 (5th ed. 2019) (collecting cases). Third-party videos that were not published by the Post simply have no bearing on whether Phillips could reasonably be

---

[1] The Post accepts as true for purposes of this motion Plaintiff's allegation that the Taitano video was embedded in the Post's news articles. In fact, however, the Post's embedded video included not only a portion of the Taitano video, but also other video of the incident.

[2] At argument, the Court referred to a report that the incident ended when students were told to depart for their buses. Tr. Oral Arg. 29–30. That is the account *Plaintiff* gave in his public statement. Compl. Ex. A. The Post's initial online and print report—the only articles that included the "blocked" and "wouldn't allow me to retreat" remarks—stated that "the incident . . . ended when *Phillips* and other activists *walked away*." Compl. Exs. D, E, F; Am. Compl. Exs. G-1, H, I (emphasis added). The private investigation commissioned by the Diocese of Covington also found that "chaperones decided to tell the students the buses were present" "*[a]fter Mr. Phillips exited the area*." Compl. Ex. B; Am. Compl. Ex. C (emphasis added).

- 2 -

understood, in the context of the article as a whole, as conveying fact or opinion.

Even if the Court were to conclude that the "blocked" and "retreat" statements were statements of fact rather than subjective opinion, the additional videos provided by Plaintiff only confirm that Phillips's account was substantially accurate. *See also* Post Br. 20–22; Post Reply Br., Dkt. 37, at 7–9 (arguing that videos showed Phillips's account was substantially true). The "Second Taitano Video," DVD Ex. 2, shows Plaintiff and Phillips facing each other at close range in what can fairly be called an "impasse," as the Post reported (0:52–3:50). What is more, the Second Taitano Video, among others, shows that Phillips was surrounded on all sides by a large, tightly packed group of students and protestors during his standoff with Plaintiff. *See* DVD Ex. 2 (2:31–40, 3:30–45); *see also* Banyamyan Video, DVD Ex. 3 (1:14:07–1:14:32); Video Cited by CovCath Student, DVD Ex. 5 (0:07–29).[3] It is easy to understand in these circumstances how Phillips felt "blocked" and unable "to retreat." Indeed, one of the teenagers shown on the video evidently shared Phillips's perception that Plaintiff was blocking him: the boy, who is standing near the pair and wearing a gray sweatshirt, shouts "You can't move him! You can't move him!" Second Taitano Video, DVD Ex. 2 (3:36–40).[4]

Finally, even as Plaintiff has provided the Court with multiple videos not actually published by the Post, he has conspicuously failed to provide the Court with a copy of the final version of the video that was created by the Post and is currently embedded in some of its online articles. His First Amended Complaint includes links to the "current" online versions of the first, second, and seventh Post articles, *see* Am. Compl. ¶¶ 250, 264, 326, all of which include an approximately six-

---

[3] Exhibit A includes a selection of screen shots from these videos showing Phillips was surrounded.

[4] The Second Taitano Video also shows Plaintiff performing a tomahawk chop as Phillips approaches (0:28–0:31), as does "The Truth in 15 Minutes" video produced by Plaintiff's counsel, submitted here as DVD Ex. 6 (4:26–28). *See also* Post Br. 26; Post Br. Ex. 5, Dkt. 27-6.

minute video that, as the Post's voiceover explains, presents both Plaintiff's and Phillips's "versions" of events, as well as "multiple video angles of the incident." Plaintiff presumably excluded this video from his submission because it undermines his chosen narrative that the Post published a one-sided account of the incident. But the video is incorporated by reference into the Complaint, and the Court may view it for itself. For the convenience of the Court, the Post has provided a copy of the video as Washington Post DVD. Plaintiff's counsel did not object to the Post's submission of this DVD.[5]

Respectfully submitted,

/s/ *Bethany A. Breetz*
Philip W. Collier
Bethany A. Breetz
STITES & HARBISON, PLLC
400 West Market Street, Suite 1800
Louisville, KY  40202-3352
Telephone:  (502) 587-3400

William G. Geisen
STITES & HARBISON, PLLC
100 East RiverCenter Boulevard
Suite 450 Covington, KY  41011
Telephone:  (859) 652-7601

*Counsel for The Washington Post*

October 23, 2019

/s/ *Kevin T. Baine*
Kevin T. Baine (*pro hac vice*)
Thomas G. Hentoff (*pro hac vice*)
Nicholas G. Gamse (*pro hac*)
Katherine Moran Meeks (*pro hac vice*)
Whitney G. Woodward (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC  20005
Telephone:  (202) 434-5000

*Counsel for The Washington Post*

---

[5] The Post updated its video along with its other coverage as the story developed. This final version of the Post video was published on January 23, 2019, when it was updated to include video from Plaintiff's appearance on the Today Show earlier that morning.

**CERTIFICATE OF SERVICE**

I hereby certify that on October 23, 2019, I electronically filed the foregoing Response to Plaintiff's Notice of Filing of Exhibits (DVDs) and Defendant's Notice of Filing of Additional Video with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to registered CM/ECF participants. I also served the document, together with the exhibit being filed conventionally, to all counsel via overnight mail.

/s/ Bethany A. Breetz
*Counsel for The Washington Post*