UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

| | |
|---|---|
| NICHOLAS SANDMANN, by and through his parents and natural guardians, TED SANDMANN and JULIE SANDMANN, <br><br> Plaintiffs, <br><br> v. <br><br> WP COMPANY LLC, d/b/a THE WASHINGTON POST, <br><br> Defendant. | No. 2:19-cv-19-WOB-CJS |
| NICHOLAS SANDMANN, by and through his parents and natural guardians, TED SANDMANN and JULIE SANDMANN, <br><br> Plaintiffs, <br><br> v. <br><br> CABLE NEWS NETWORK, INC., <br><br> Defendant. | No. 2:19-cv-0031-WOB-CJS |
| NICHOLAS SANDMANN, by and through his parents and natural guardians, TED SANDMANN and JULIE SANDMANN, <br><br> Plaintiffs, <br><br> v. <br><br> NBCUNIVERSAL MEDIA, LLC, <br><br> Defendant. | No. 2:19-cv-56-WOB-CJS |

**JOINT REPORT OF THE PARTIES' RULE 26(F) PLANNING MEETING**

1.  **Planning Meeting:** Counsel for each of the parties participated in a telephonic Rule 26(f) conference on Monday, December 23, 2019.

2.  **12(f)(3)(A) Initial Disclosures**: The parties agree that initial disclosures shall be exchanged by Plaintiff, CNN, NBC, and the Post on the same day: January 31, 2020. Initial disclosures will be in the form required by Rule 26(a)(1).

3.  **12(f)(3)(B) Subjects on Which Discovery May be Needed:**

    A. *Plaintiff's Position*: Discovery should include the following subjects:
    i. Truth or falsity of the statements at issue;
    ii. Defendants' negligence in publishing the statements at issue;
    iii. Defendants' state of mind, including whether the Defendants acted with actual malice under *New York Times Co. v. Sullivan,* 376 U.S. 254 (1964) and whether Defendants acted with malice, oppression, or fraud, or with gross negligence;
    iv. Sources for the Defendants' reporting;
    v. Defendants' reporting processes and procedures; and
    vi. Damages.

    The above list may not be exhaustive and is subject to change.

    B. *Defendants' Position*: In conformity with the Court's Orders, discovery initially should be limited to whether the sole remaining statements in the case (that Plaintiff "blocked" Mr. Phillips and prevented him from retreating) are either substantially true, matters of opinion, or not defamatory per se. Defendants propose, therefore, that the parties proceed initially with "Phase 1" discovery limited to the facts pertaining to the standoff between Plaintiff and Mr. Phillips.

    Plaintiff's case against each Defendant then would be ripe for an early motion for summary judgment on whether the "blocking" statements are matters of opinion, substantially true, or not defamatory. If that motion is denied in any of the three cases, the parties can then proceed with the far more extensive "Phase 2" discovery that will be required on the remaining issues—including the issues identified by the Plaintiff, as well as the question whether the Plaintiff is a limited-purpose public figure under the First Amendment for purposes of this case.

    There are several reasons why phased discovery would be the most efficient way to proceed and consistent with the Court's Orders:

    1. In deciding to permit the amended complaints, the Court expressly held that the cases would proceed only "to the extent that [each defendant]" reported that "plaintiff 'blocked' Nathan Phillips" and "would not allow him to retreat." Dec. 28, 2019 Order, Dkt. No. 64. The Court stated that it would consider these statements "anew on summary judgment." *Id.* If

2

       Phase 1 discovery were limited initially to what happened in the standoff between Plaintiff and Mr. Phillips, Defendants would be in a position to submit an early summary judgment motion on the questions whether the "blocking" statements were defamatory, matters of opinion, or substantially true.

    2. Phased discovery could avoid altogether the dozens of fact depositions that would be required to address all issues the Plaintiff would like to raise now, given that (a) roughly 100 students were on the scene, along with a dozen or so chaperones, numerous Native American and Black Hebrew Israelite protesters, and numerous other parties; (b) Church and school officials have relevant testimony; (c) a large number of persons in the community have potential testimony about the effect of the reporting on Plaintiff's reputation; (d) plaintiff has claimed medical/psychological damages; and (e) countless other media entities covered the incident. This avoidable discovery would be expensive, burdensome on non-parties, and intrusive for both parties (involving Defendants' newsgathering and editorial processes and Plaintiff's personal reputation and emotional condition).

    3. Phased discovery could avoid altogether the need for expert discovery.

    4. Discovery in Phase 1 can easily be conducted jointly by all parties in the three cases. Much of the discovery in Phase 2 would pertain to the conduct of each media defendant, their respective fault or mental state, and the damages associated with their respective publications, which would not be conducted jointly.

**4. 12(f)(3)(B) When Discovery Should be Completed, and Whether Discovery Should be Conducted in Phases:**

As explained above, the parties disagree on whether discovery should be conducted in phases.

    A. ***Plaintiff's Position*** is that discovery in this case is straightforward as the case is currently postured and thus should proceed on all issues in the case in an orderly and timely fashion. The issue of the truth or falsity of Defendants' reporting will not be found in 30 or 50 depositions; it will be found in the real-time videos of the event at issue, the truth of which cannot be contradicted or altered by bias or perceived recollections no matter how much testimony is taken in this case. Discovery in this case is principally about fault, common law malice, and damages. Accordingly, Plaintiff proposes the following schedule:

| Deadline | Date |
|---|---|
| Discovery Commences | January 7, 2020 |
| Exchange Initial Disclosures | January 31, 2020 |

3

| | |
|---|---|
| Plaintiff's Deadline to Amend or Join Parties | May 1, 2020 |
| Defendants' Deadline to Amend or Join Parties | June 1, 2020 |
| End of Fact Discovery | July 31, 2020 |
| Opening Expert Reports | September 1, 2020 |
| Rebuttal Expert Reports | October 1, 2020 |
| Expert Depositions | November 2, 2020 |
| Summary Judgment Motions | November 2, 2020 |
| Summary Judgment Oppositions | December 17, 2020 |
| Summary Judgment Replies | January 7, 2021 |

B. *Defendants' Position* is that discovery should initially be limited to the facts pertaining to whether Mr. Sandmann "blocked" Mr. Phillips and "would not allow him to retreat." Dec. 28, 2019 Order, Dkt. No. 64. This discovery would be ***strictly limited in scope—and should require no more than five depositions per side*** (plus Messrs. Phillips and Sandmann, i.e., no more than twelve total for all parties combined). The Defendants would then be in a position to present the threshold issues of substantial truth, opinion, and defamatory meaning to the Court on an early motion for summary judgment. If that motion is successful, the parties will have been spared the burden and expense of the substantial discovery that would otherwise be required to explore all of the other potential issues in the case—discovery that would involve dozens of depositions, potentially intrusive discovery of the Plaintiff and of the Defendants' newsgathering operations, and substantial expert discovery.

Defendants, therefore, propose the following two-phased schedule for discovery and motions:

*Phase 1*

| **Deadline** | **Date** |
|---|---|
| Discovery Commences | January 7, 2020 |
| Exchange Initial Disclosures | January 31, 2020 |
| End of Depositions and Fact Discovery | June 8, 2020 |
| Summary Judgment Motions | July 10, 2020 |
| Summary Judgment Oppositions | August 10, 2020 |
| Summary Judgment Replies | August 31, 2020 |

*Phase 2 (if necessary)*

| **Deadline** | **Date** |
|---|---|
| Discovery Resumes | Phase 1 summary judgment ruling |
| Plaintiff's Deadline to Amend | 2 months after Phase 1 |
| Defendants' Deadline to Amend | 3 months after Phase 1 |
| End of Depositions and Fact Discovery | 6 months after Phase 1 |
| Expert Reports | 7 months after Phase 1 |
| Rebuttal Expert Reports | 8 months after Phase 1 |
| Expert Depositions | 9 months after Phase 1 |

4

| Summary Judgment Motions | 10 months after Phase 1 |
| Summary Judgment Oppositions | 11 months after Phase 1 |
| Summary Judgment Replies | 11.75 months after Phase 1 |

Defendants also believe that if all discovery is to proceed in a single phase, the schedule proposed by the Plaintiff is unrealistic and problematic.

i. As noted below, Plaintiff contemplates that the parties will take a total of 60 depositions, and Defendants believe that as many as 90 could be required. Plaintiff's proposed schedule would allow only a few months for these depositions. Many of those are third-party depositions, and most will require coordination among four sets of counsel.

ii. Plaintiff's position that third party eyewitness depositions are unnecessary because eyewitness testimony can be offered through "affidavit or in-person examination at trial," *see infra* Paragraph 8(A), is clearly incorrect and would be prejudicial to the Defendants. Plaintiff has much greater access than Defendants do to the vast majority of third party witnesses (e.g., his classmates and chaperones). Defendants will need to depose any eyewitnesses from whom Plaintiff may secure affidavits or whom Plaintiff may call as witnesses at trial.

iii. In addition, Plaintiff's proposed schedule would require Defendants to draft summary judgment motions in one month—the same month when all expert depositions must take place. By contrast, Plaintiff has allotted himself six weeks to respond to summary judgment motions, when no other activity is scheduled during that time. The deadline for summary judgment motions should be 30 days after all depositions are concluded.

Therefore, should the Court instruct the parties that all discovery proceed in a single phase, Defendants would propose the following schedule:

| Deadline | Date |
|---|---|
| Discovery Commences | January 7, 2020 |
| Exchange Initial Disclosures | January 31, 2020 |
| End of Depositions and Fact Discovery | January 15, 2021 |
| Expert Reports | February 15, 2021 |
| Rebuttal Expert Reports | March 15, 2021 |
| Reply Expert Reports | April 16, 2021 |
| Expert Depositions | May 14, 2021 |
| Summary Judgment Motions | June 14, 2021 |
| Summary Judgment Oppositions | July 12, 2021 |
| Summary Judgment Replies | August 2, 2021 |

5. **12(f)(3)(C) Electronically Stored Information:** The parties agree to separately and in good-faith negotiate a protocol for discovery of electronically stored information ("ESI")

5

to be executed before the commencement of document productions.  The parties do not anticipate any issues regarding the preservation of ESI.

6. **12(f)(3)(D) Privileged Information and Protective Order:**  The parties agree to separately negotiate in good-faith a jointly proposed protective order to be executed before the commencement of document productions.

7. **12(f)(3)(E) Changes to Interrogatory Limits:**  The parties agree that there are no changes needed to the number of interrogatories allowed under Fed. R. Civ. P. 33 (25 per party in each case).

8. **12(f)(3)(E) Changes to Deposition Limits:**  The parties agree that that all parties shall be permitted to attend and participate in all depositions noticed by any other party, and all depositions shall bear the caption of all cases without the need to serve additional deposition notices.  The parties also agree that should any party need to exceed these limits, the party may move for leave to do so.  The parties further acknowledge that expert depositions do not count toward the limits on the number of depositions set forth by the Federal Rules of Civil Procedure or as stated herein.

    A. *Plaintiff's Position* is that no changes to the Federal Rules are necessary, and each party in each case should therefore be limited to 10 fact depositions, which should be sufficient to permit the parties to efficiently and economically develop a full factual record in this case. Plaintiff submits that this number is the outer limit for depositions, as all eyewitnesses do not need to be deposed in view of the undisputed availability of videos of the entire incident at issue involving Plaintiff and Nathan Phillips. "Eyewitness" testimony to this incident can be provided for motions by affidavit or in-person examination at trial – depositions of "eyewitnesses" other than Plaintiff and Nathan Phillips are unnecessary or are not expected to be sought by Plaintiff.

    B. *Defendants' Position* is that ***if discovery were to proceed on all issues in the case,*** they would require 30-50 fact depositions in total, given that (a) roughly 100 students were on the scene, along with a dozen or so chaperones, numerous Native American and Black Hebrew Israelite protesters, and numerous other parties; (b) Church and school officials have relevant testimony; (c) a large number of persons in the community have potential testimony about the effect of the reporting on Plaintiff's reputation; (d) plaintiff has claimed medical/psychological damages; and (e) countless other media entities covered the incident.

    ***If discovery were bifurcated, however, the parties could be limited to a handful of depositions for each side in Phase 1.***  Defendants therefore propose the following limits:

6

1. Phase 1:  5 depositions total for Plaintiff, and 5 depositions total for Defendants, plus Nathan Phillips and Plaintiff, limited to whether Plaintiff "blocked" Nathan Phillips and "would not allow him to retreat."

2. Phase 2 (if necessary):  15 additional fact depositions for the Plaintiff per case, and 15 additional fact depositions for each Defendant (90 additional depositions total).

9. **12(f)(3)(E) Changes to Deposition Duration:**  The parties agree that every deposition will be limited to 7 hours on the record.  For third party depositions noticed by one side, the noticing side will be entitled to 5 hours on the record, with 2 hours reserved for the other side; for third party depositions noticed by both sides, each side will be entitled to 3.5 hours on the record and the deposition will count against the limit for each side (the above being subject to Plaintiff's request below regarding Nathan Phillips).  The parties may move for leave to amend these time limits for good cause.

    A. *Plaintiff's Position* is that in a consolidated discovery process as suggested by Plaintiff there is no reasonable or necessary basis to subject Plaintiff to 21 hours of deposition testimony. Plaintiff offers a two-day deposition of Plaintiff and each of his parents totaling 14 hours each for all Defendants' discovery examinations. In making this offer, Plaintiff does not agree that lengthy examinations beyond the normal 7-hour limit for depositions are reasonable or necessary. Depositions of Defendants' agents and employees (party deponents) shall be limited to one day per deponent consisting of not more than 7-hours of sworn testimony on the record per deponent.  Plaintiff also believes that any party should be able to separately notice Nathan Phillips and depose him for a full 7 hours each, if necessary.

    B. *Defendants' Position* is that each Defendant should be entitled to its own 7-hour deposition of the Plaintiff, and each of the Plaintiff's parents may be required to sit for a deposition not to exceed 10 hours.  As for Mr. Phillips, the parties should jointly negotiate a single third party supboena to simplify any enforcement required by the Court in the District in which Mr. Phillips resides.

10. **Other Topics:**

    A. **Consolidation:**  The parties agree that while discovery should be consolidated to the extent that it is practical, the issues concerning each defendant are different and should be tried separately.  The cases should, therefore, not be consolidated, but depositions taken in one case should be admissible in any case against any party who was invited to attend and was present at the deposition.

    B. **Trial Before Magistrate:**  The parties do not consent to have the case tried before a magistrate.

7

C. **Settlement:**  As required by the Federal Rules, the parties discussed but are unable to evaluate a potential settlement of this case until discovery is undertaken and likely completed.

D. **Requested Pretrial Conference Date:**  The parties request a pretrial conference date at least 30 days before trial.

E. **Suggested Trial Length:**  The parties disagree about the appropriate trial length.

   1. *Plaintiff's Position:*  Each trial should be 5-6 trial days.

   2. *Defendants' Position***:**  Each trial should be two weeks, or 10 trial days.

January 3, 2020                                     Respectfully submitted,

/s/ *Todd V. McMurtry*
Todd V. McMurtry
Kyle M. Winslow
Hemmer DeFrank Wessels PLLC
250 Grandview Drive
Suite 500
Ft. Mitchell, KY 95343
Phone:  (859) 344-1188
Fax: (859) 578-3869
Email: tmcmurtry@hemmerlaw.com

L. Lin Wood (*pro hac vice*)
Nicole Jennings Wade (*pro hac vice*)
Jonathan D. Grunberg (*pro hac vice*)
G. Taylor Wilson (*pro hac vice*)
L. LIN WOOD, P.C.
1180 W. Peachtree St., Ste. 2040
Atlanta, GA 30309
Phone:  (404) 891-1402
Fax:  (404) 506-9111
Email: lwood@linwoodlaw.com

*Attorneys for Plaintiff*

and

/s/ *Bethany A. Breetz*
Philip W. Collier
Bethany A. Breetz
STITES & HARBISON, PLLC

400 West Market Street, Suite 1800
Louisville, KY 40202-3352
Telephone: (502) 587-4500
bbreetz@stites.com

William G. Geisen
STITES & HARBISON, PLLC
100 East RiverCenter Boulevard, Suite 450
Covington, KY 41011
Telephone: (859) 652-7601

Kevin T. Baine (*pro hac vice*)
Thomas G. Hentoff (*pro hac vice*)
Nicholas G. Gamse (*pro hac vice*)
Katherine Moran Meeks (*pro hac vice*)
Whitney G. Woodward (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
thentoff@wc.com

*Attorneys for The Washington Post*

and

/s/ *James E. Burke*
James E. Burke (*pro hac vice*)
Sarah V. Geiger
Amanda B. Stubblefield
Keating Muething & Klekamp PLL
One East Fourth Street, Suite 1400
Cincinnati, OH 45202
Telephone: 513.579.6400
Fax: 513.579.6457
jburke@kmklaw.com
sgeiger@kmklaw.com
astubblefield@kmklaw.com

Charles D. Tobin (*pro hac vice*)
Maxwell S. Mishkin (*pro hac vice*)
BALLARD SPAHR LLP
1909 K Street, NW, 12th Floor
Washington, DC 20006
Telephone: (202) 661-2200
Fax: (202) 661-2299

9

tobinc@ballardspahr.com
mishkinm@ballardspahr.com

Leita Walker (*pro hac vice* pending)
BALLARD SPAHR LLP
2000 IDS Center
80 South Eighth Street
Minneapolis, MN 55402-2274
Telephone: (612) 371-6222
Fax: (612) 3713207
walkerl@ballardspahr.com

*Attorneys for Cable News Network, Inc.*

and

/s/ *John C. Greiner*
John C. Greiner (*pro hac vice*)
GRAYDON HEAD & RITCHEY LLP
312 Walnut Street, Suite 1800
Cincinnati, OH 45202
Phone: (513) 629-2734
Fax: (513) 333-4316
jgreiner@graydon.law

J. Stephen Smith
Darren W. Ford
GRAYDON HEAD & RITCHEY LLP
2400 Chamber Center Drive
Suite 300
Ft. Mitchell, KY 41017
Phone: (859) 578-3070
Fax: (859) 578-3071
ssmith@graydon.com
dford@graydon.com

*Attorneys for NBCUniversal Media, LLC*

10